# Perkins *v.* The State.

### *Indictment for Murder.*

1.   *Objection to indictment on account of evidence before grand jury, and instructions to grand jury.*—When an indictment is found on insufficient testimony, the objection is not good matter for a plea in abatement, but is only available on motion to quash, supported by testimony; and the instructions of the court to the grand jury can neither be excepted to, nor assigned as error.

2.   *Second indictment, preferred on account of defects in first.*—When a second indictment is preferred, on account of fatal defects in the first, or in the organization of the grand jury by which it was found (Code, § 4819), it is not necessary that the first indictment should be quashed before the second is found ; the better and more usual practice is to the contrary.

3.   *Confessions ; when admissible.*—The confessions of the defendant in this case, a freedman, made to another freedman while confined in jail, held to have been made voluntarily, and therefore admissible, on the authority of *Aaron v. The State*, 37 Ala. 106, and *Johnson v. The State*, 59 Ala. 37.

APPEAL from the Circuit Court of Sumter.

Tried before the Hon. WM. S. MUDD.

The prisoner in this case, Ben. Perkins, a freedman, was indicted, jointly with Cæsar Clanton, another freedman, for the murder of Gilbert Roberts. The indictment, on which the prisoner was tried, was found at the October term of the court, 1879 ; and on the same day on which the indictment was returned into court, October 16th, 1879, on motion of the prosecuting attorney, an order was made and entered by the court, quashing another indictment against said Perkins and Clanton, found at the April term, 1877, for the same offense, on the ground that it was preferred by a grand jury illegally organized. The order for the completion of the grand jury by which the former indictment was found, as set out in the order quashing it, was in these words : "And there not being a sufficient number to complete said grand jury, the court ordered the sheriff to draw from the list of petit jurors for the first week of the present term, to complete said grand jury ; from which the, following named per-

sons were drawn," &c. The order granting the motion to quash. recites, "and the defendant being present in open court, and not objecting, it is considered by the court, and is the judgment of the court, that the motion be granted, and the accusation quashed; and it is the order of the court, that said defendant, Ben Perkins, be held in custody, to answer another indictment preferred against him for the same offense." A severance having been granted, on motion of the defendants, and the defendant Perkins having been arraigned on the new indictment, he filed three special pleas, as follows :

1. "That he was heretofore duly arraigned upon an indictment duly preferred by the grand jury of said county, as organized at the Spring term of said court, 1877, as shown by the minute-entry of the organization of said jury, of record in said court, which is made part hereof by reference thereto ; that before said indictment, to which this defendant had duly pleaded not guilty, and none other thereto, upon arraignment thereon, had been abated, quashed, or otherwise disposed of, and while the same was pending in said court as an indictment against this defendant, on the morning of October 16th, 1879, the grand jury of said county, organized at and for said October term of said court, 1879, came into court, and made presentment of certain indictments, which the court-ordered the clerk of said court to file ; that said court thereupon inquired of said grand jurors, if they desired further instructions as to their duties; that the foreman of said grand jury thereupon replied, that they did not; that the court then asked if the solicitor was in court, to which said foreman replied that he was not; that the court then said, in substance, as follows : ' I will venture to make this suggestion to you, gentlemen; in cases where indictments have heretofore been found, but were defective, because of the organization of the grand jury, it is necessary to have some witnesses before you, to find new bills, but you need not go into as full an investigation as if the case came up before you originally.' Thereupon, the said grand jury withdrew, to consider of their presentments; and afterwards, on the morning of the same day, the said grand jury returned into court the said indictment upon which this defendant is now arraigned, and to which he makes this plea; and thereafter the said former indictment, so preferred against this defendant at the Spring term of said court, 1877, was quashed by the said court, on motion of the solicitor. And defendant makes oath that this plea is true."

2. "That he was heretofore duly arraigned, upon an indictment presented by the grand jury of said county at the

Spring term of said court, 1877, charging him with the identical offense charged in the indictment to which he now pleads; that upon his said arraignment he duly pleaded not guilty thereto; that upon his said plea he was duly tried, at the ——, and was found guilty of said charge, and by the verdict of the jury trying the said issue it was adjudged that he be confined in the penitentiary during the term of his natural life, and was by said court duly sentenced; that this defendant duly appealed therefrom to the Supreme Court of the State, and upon said appeal said judgment was reversed, and said cause thereupon duly remanded to said Circuit Court, for a new trial upon said indictment; which said indictment is not, and has not been lost, mislaid, or destroyed, but is now on file in this court, and the record and proceedings had upon said original indictment are of record and on file in said court, and in said Supreme Court, and are hereby referred to, and by reference prayed to be made a part of this plea; and defendant prays an inspection thereof, and makes oath that this plea is true."

3. The third special plea set out the arraignment and trial on the former indictment, the verdict and judgment, appeal, and reversal, as in the second plea, and then continued thus: "And defendant avers, that the said indictment to which he now pleads was preferred by the grand jury so presenting, and was placed on file in this court, before said indictment upon which he was heretofore arraigned as aforesaid, and upon which he was heretofore tried as aforesaid, was quashed or abated; and he makes oath that this plea is true."

On motion of the prosecuting attorney, the first of these pleas was struck from the files as frivolous, and a demurrer was interposed and sustained to the second and third; and the defendant having then pleaded not guilty, issue was joined on that plea, and a trial was had, which resulted in a verdict finding the defendant guilty of murder in the first degree, and sentencing him to be hanged. "On the trial," as the bill of exceptions states, "the State proved that Gilbert Roberts, the person named in the indictment, was killed on the night of April 13th, 1877, by being shot with a gun; that the killing was done secretly, and under circumstances showing that it was an assassination; and introduced evidence of circumstances showing that the killing was done by the defendant. During the progress of the trial, one Sol Brown was introduced as a witness on the part of the State, to prove confessions made to him by the defendant; and before he was permitted to testify, with a view to determine whether the proposed confessions should be allowed to go to the jury, the court required said witness to state to the court

[Perkins v. The State.]

what had been said or done by him, or by any other person, to induce the defendant to make said proposed confessions, and the circumstances under which they were made. Said witness, then, being examined by the court, stated, that he was an old friend and acquaintance of the defendant, and was in Gainesville on the day after Gilbert Roberts was killed; that, being informed that defendant had been arrested, and was in the custody of the deputy-sheriff, on the charge of killing said Roberts, he went to the room where the deputy-sheriff had him in custody, and asked permission of said deputy to have a private talk with him; that permission was granted, and witness and defendant went into a room by themselves, and locked the door, the deputy-sheriff going off some distance, and leaving defendant alone in the charge of witness; that witness began the conversation, by saying to defendant, '*I feel very sorry for you, Ben, and want you to come out of it.*' Defendant shed tears, witness said, and said, '*O, uncle Brown, what a pity it is that a man should be bribed by money to kill another man.*' Witness then said to defendant, '*Let him who did the act, bear the yoke,*' and it would be better for him, meaning defendant. Defendant then said, '*Go after my wife,*' and witness did so; and defendant's wife went in to where he was. This, the witness said, was all that occurred up to that time. Witness then stated, that after defendant's wife came, defendant said to witness, '*I made five or ten jumps from the window, and I now have $17 in my pocket, and can get $30 more whenever I want it.*' Witness stated, that nothing at all was said to defendant by him, or by any other person, after his wife came, and before these last statements were made by the defendant, but that defendant seemed to be in much trouble and distress. Upon this examination made by the court, the witness was permitted to testify to the jury as to said confessions, the court holding that they were voluntary; to which ruling and action of the court the defendant excepted."

There is no assignment of errors on the record, and there are no briefs on file.

H. C. TOMPKINS, Attorney-General, for the State.

STONE, J.—1. If the grand jury found the second indictment in this case on insufficient testimony, that was not a matter for plea in abatement. It could have been reached only by motion to quash, supported by testimony.—*Sparrenberger's case,* 53 Ala. 481. An exception to the judge's charge to the grand jury is not provided for by our statute, and does not furnish ground for an assignment of error in

this court.—Code of 1876, §§ 3107, 4978; 1 Bish. Cr. Proc. §§ 872, 873, 885.

2. The objection that the second indictment was found before the first one was quashed, can not be sustained. That is the better and more usual practice.—1 Whar. Amer. Cr. Law, § 573; 1 Bish. Cr. Proc. § 770, and other authorities cited by counsel. The Circuit Court did not err in the various rulings on the pleas in abatement.

3. The Circuit Court did not err in receiving the confessions of the accused in evidence. No inducement of promise, or menace to him, called out what he said. His statements appear to have been entirely voluntary.—*Aaron v. The State*, 37 Ala. 106; *Johnson v. The State*, 59 Ala. 37.

The judgment is affirmed.

It is therefore ordered and adjudged, that the sentence of the law be carried into effect, by hanging the defendant, Ben Perkins, by the neck, until he is dead, on Friday, 26th August, 1881; and the sheriff of Sumter county is charged with the execution of this sentence, in the mode prescribed by the statute.—Code of 1876, § 4617.