# Reese *v.* The State.

## *Indictment for Murder.*

1. *Service of copy of indictment and list of jurors in capital case.* Service of a copy of the indictment and list of the jury in a capital case is properly made "on counsel appearing for" the defendant, as authorized and required by statute (Code, § 4449), when it is shown that they were handed by the sheriff to the junior partner of the attorney retained by him, whose name was also entered on the docket as of counsel, although he testifies that he was not of counsel, but was only assisting his senior partner, who was employed before the formation of the partnership.

2. *Abstract charges* are properly refused, without regard to the correctness of the legal proposition asserted.

3. *Provocation reducing murder to manslaughter.*—Heat of passion, *per se,* never reduces a murder to manslaughter; nor will mere words, however opprobrious, have that effect. The provocation must at least amount to personal violence, and the fatal blow must ·be the unpremeditated result of the passion thus aroused.

4. *Indictment; averment as to name of deceased.*—An indictment which charges the murder of a man, "whose name is to this grand jury unknown," is sufficient (Code, § 4377), unless it is shown that his name was in fact known to the grand jury; and the sufficiency of the indictment is not affected by a further averment, that "said man was supposed to be named C. Mehan."

From the Circuit Court of Jackson.

Tried before the Hon. JOHN B. TALLY.

The indictment in the case charged that the defendant, Sampson Reese, "unlawfully and with malice aforethought killed a man whose name is to this grand jury unknown, by shooting him with a gun. Said man, so killed, was supposed to be named C. Mehan, and was killed at the store of Glover & Ladd, on the south side of the Tennessee river, near Bridgeport, on Monday, the 29th day of May, 1881, in said county of Jackson." The indictment was found in June, 1881, and the trial was had in August, 1890, resulting in a verdict of guilty of murder in the first degree, and sentence to the penitentiary for life.

[Reese v. The State.]

When the case was called, on the day set for the trial, "the defendant objected to proceeding with the trial, because he had not been served with a copy of the indictment and of the jurors summoned for his trial, as the law required; and thereupon offered the following evidence in support of his objection: G. D. Campbell, the deputy-sheriff, testified" that on Monday, the 25th August, 1890, having the papers in his hands to be served, "he went to W. F. Kirk, a practicing attorney, and partner of J. E. Brown, and asked him if him he was with Brown in Reese's case; that Kirk replied, that he was; that Brown was then arguing a case before the jury, and Kirk was sitting by the table inside the bar; that he thereupon handed the papers to Kirk, and never saw them afterwards, and never made any other service." Kirk testified, that when said Campbell "came to him in the court-house, and asked if he was interested in Reese's case, he replied that he was assisting Mr. Brown;" that Campbell then handed him the papers, "and he promised to hand them to Brown, and intended to do so, but laid them down on the table, and forgot them;" also, "that he was not of counsel in the defendant's case, and had never been, either individually, or as Brown's partner, and was only helping Brown; that their partnership was formed long after the defendant's case was on the docket, and related only to cases acquired afterwards." Brown testified "that he was the defendant's attorney, and Kirk was not engaged as attorney in the case; that he had not been served with a copy of the indictment and a list of the jury, nor had it ever been called to his attention until yesterday, when he found it lying on his table, and learned on inquiry what it was." The deputy-clerk of the court testified, "that the name of W. F. Kirk had appeared on the docket, with that of J. E. Brown, as coun sel for the defendant, since February, 1889;" and the docket was also introduced, showing that fact. On this evidence, the court overruled the defendant's objection, and required the trial to proceed; to which ruling defendant excepted.

The defendant then demurred to the indictment, and, his demurrer being overruled, he pleaded not guilty. On the trial, the State introduced evidence showing that, on Sunday, May 29th, 1881, while a party of young men were bathing in the river, the deceased passed by, and was invited to join them, though he was a stranger; that he went into the water with them, but soon became angry because some one threw water on him, came out and got his knife, and stabbed one Copeland in the neck; that Copeland died in a few minutes; that the deceased was arrested, and carried to the store of Glover & Ladd, about a half mile up the river, where an ex-

40

cited crowd gathered; that the defendant, Reese, who was a cousin of Copeland, but was not one of the bathing party, came up with his rifle in his hand, and, calling to the crowd to get out of the way, fired and killed the deceased, whose hands were at the time tied behind his back. Two or three witnesses for the defendant testified, that the crowd was very much excited; that frequent threats of lynching the deceased were made, guns and pistols displayed, and several shots fired at the time the deceased was killed.

The defendant requested the following charges in writing, and duly excepted to the refusal of each:  (1.)  "Manslaughter is the unlawful killing of a human being, without malice; that is, as the unpremeditated result of passion-heated blood. This passion-heated blood may be caused by an assault and battery, or it may be from some other adequate cause sufficient to reduce the killing."  (2.)  "Notwithstanding the jury may be satisfied beyond a reasonable doubt that the defendant killed the deceased, and that he did it from a formed design; still he may not be guilty of murder in the first degree—there may have been some sufficient provocation, which caused him to form the design."  (3.)  "If the jury are satisfied from the evidence, beyond a reasonable doubt, that defendant killed the deceased in this county, before the finding of the indictment, and further that he did it from a sudden passion, caused by sudden provocation, and not from malice, or formed design, but did it voluntarily; defendant would be guilty of manslaughter in the first degree only."

J. E. BROWN, for appellant.

WM. L. MARTIN, Attorney-General, for the State.

STONE, C. J.—It was objected in the court below, that a copy of the indictment, and "a list of the jurors summoned for his trial," were not served on the defendant, or on counsel appearing for him, one entire day before the day set for his trial.—Code of 1886, § 4449.  This objection was urged as a reason why the defendant should not then be put upon his trial.  The objection was overruled, and the defendant excepted.

It will be observed that the statute referred to was very materially changed by the adoption of the Code of 1886.  See Code of 1876, § 4872.  Hence the rulings on the former statute are not strictly applicable to this.  Whether the defendant is in custody, or out on bail, the service may now be made on counsel.  And it is not material that such counsel has been

retained by the defendant. If he appears for him, that is enough. We think, under the facts of this case as disclosed by the testimony, the Circuit Court rightfully ruled, that service of the *venire* and indictment had been mrde on "counsel appearing" for the defendant, "one entire day before the day set for his trial," and that the motion of defendant was rightly overruled.

The bill of exceptions states it contains the substance of the testimony. It contains not a word or intimation of wrong, or even insult, given by the deceased to the accused. The only pretense of excuse was, that about an hour before the fatal shot was fired, deceased stabbed and killed one Copeland, who was cousin to Reese, the defendant. But deceased had been arrested, and was in custody, with his hands tied behind him. In this condition he was fired on, and slain, without the interchange of a word between him and his slayer.

Defendant asked three several charges ; they were refused, and he reserved separate exceptions. Each charge appears to have had for its object the mitigation of the offense, and of the jury's finding to some lower grade of homicide. Charges should never be given, unless there is some testimony tending to sustain and authorize the legal principle invoked. A charge, without testimony to support its hypothesis, is abstract, and should be refused, no matter how correct a legal principle it may assert. It has no application to the issue the jury is trying.—3 Brick. Dig. 113, § 106.

But heat of passion, *per se*, never reduces a homicide to manslaughter. Nor will mere words, however opprobrious, have that effect. The provocation must at least amount to personal violence, and the fatal blow must be the unpremeditated result of the passion thus aroused, to reduce the offense to manslaughter.—3 Brick. Dig. 219, § 567. Even if it be conceded that deceased had wantonly, and without provocation, murdered defendant's cousin an hour before, this, under the facts shown in this record, does not tend in the slighest degree to mitigate his offense. It rather tends to show a " willful, deliberate, malicious, and premeditated killing. "

The charges asked were all faulty, in that they assume that mere passion, or heat of blood, may mitigate a homicide, irrespective of the sufficiency of the provocation which engendered it ; or, whether, in fact, there need be any provocation which excited the passion. They make mere passion, irrespective of its exciting cause, the mitigating factor. The law sanctions no such proposition.

The deceased is described in the indictment as "a man whose name is to this grand jury unknown." This was sufficient,

[Jones v. The State.]

unless, on motion to quash, or on the trial, it had been shown that the name was known to the grand jury. That proof being made on a motion to quash, the court would have quashed the indictment. A man's name is part of the description by which he is identified; and if known to the grand jury, it must be given in the indictment.—*Sparrenberger v. State*, 53 Ala. 481; *Perkins v. State*, 66 Ala. 457; *Duvall v. State*, 63 Ala. 12.

In the present case, the indictment goes a step farther. After stating that the name of the deceased was unknown to the grand jury, it added, "said man so killed was supposed to be named C. Mehan." The indictment was demurred to, and the ground of demurrer relied on was repugnancy in its averments, in this, that it first averred the name of the deceased was unknown, and then contradicted that averment by giving his name. There is nothing in this objection. Supposition is not knowledge, nor is it such conviction that it can be averred as fact. If the indictment had averred that the name of the deceased was C. Mehan, and the only proof offered in support of the averment had been that his name was supposed to be C. Mehan, the testimony would have been rejected as illegal; and there was no testimony on which the jury could have found that the name of the deceased was known to the grand jury. The demurrer was properly overruled.

There is no error in the record, and the judgment is affirmed.