[Argued November 21, 1894; decided January 14, 1895.]

## STATE *v.* REINHART.

[S. C. 38 Pac. 822.]

1. INDICTMENT — TRANSCRIPT IN CRIMINAL CASES — PRESUMPTION — CODE, §§ 1315, 1413, 1444.— The fact that the transcript does not show that an indictment was found and returned by the grand jury in accordance with the provisions of chapter VII of the Criminal Code is no ground for reversal, since that matter does not properly belong in the transcript, Code, §§ 1413, 1444, and, in the absence of evidence to the contrary, it will be presumed that all the proceedings preliminary to the matters set forth in the transcript were regular. Moreover, in this case the objection was not raised by motion, as required by section 1315 of Hill's Code.

DISMISSAL OF INDICTMENT FOR FELONY — JEOPARDY — CODE, §§ 1527, 1528, 1529.— The dismissal of an indictment for felony before jeopardy attaches is not a bar to another prosecution for the same offense, although the reason for the dismissal is not set forth in the journal, as required by Hill's Code, §§ 1527, 1529; and the same rule obtains if the indictment is dismissed after a demurrer has been overruled, or after a trial resulting in a disagreement.

3. POWER OF GRAND JURY TO RETURN ADDITIONAL INDICTMENTS.— It is not only the right, but also the duty, of the grand jury to return a new in-

dictment against a defendant where a former indictment still pending and undisposed of is defective or insufficient, unless some proceeding has been had thereon which bars further prosecution : and the power of the grand jury in this regard is not dependent upon the order of the court resubmitting it to them.

4. DISAGREEMENT OF JURY — FORMER JEOPARDY.—When the jury in a criminal case, after having deliberated upon their verdict such a length of time as the trial court may deem reasonable, state in open court, in the presence of the defendant, that they cannot agree, and the court is satisfied with their statement, and discharges them, the apparent jeopardy in which the defendant was placed by the impaneling of the jury is annuled, and the defendant may again be tried for the same offense ( *State* v. *Shaffer*, 23 Or. 555, cited and approved ); and in such case the action of the trial court is conclusive, and will not be reviewed, either by the appellate court, or by a jury on a plea of former jeopardy.

5. INDICTMENT— EMBEZZLEMENT — LARCENY — CODE, § 1770.— An indictment for embezzlement, under section 1770, Hill's Code, is sufficient if the facts set forth describe the crime as defined in the statute, and the words "shall be deemed guilty of larceny" are used simply to indicate that the crime of embezzlement is equal to, and shall be punished as, larceny : *State* v. *Sweet*, 2 Or. 127, approved and followed.   It necessarily follows that such an indictment need not allege that the defendant did feloniously "take, steal, and carry away" the property referred to.

6. EMBEZZLEMENT — CONFESSIONS — CORROBORATION — CODE, § 1368.— A "confession," in a legal sense, is restricted to an acknowledgment of guilt made by a person after an offense has been committed, and does not apply to a mere statement or declaration of an independent fact from which such guilt may be inferred; therefore on a trial for larceny by embezzlement, the books kept by the defendant for his employer, and which he falsified to conceal his stealings, are not a " confession," and need not be corroborated by other evidence to sustain a conviction.

7. EVIDENCE OF EMBEZZLEMENT—SUMMARY OF BOOKS.— On a trial for larceny by embezzlement, a summary taken by an expert from the books kept by defendant for his employer is competent to show the condition of the employer's accounts.

8. EMBEZZLEMENT—POSSESSION BY VIRTUE OF EMPLOYMENT— CODE, § 1770.— Where a clerk or employe is charged with the duty of receiving and accounting for funds, and he fraudulently converts any of them to his own use, he is guilty of embezzlement. for whatever moneys or funds he received came into his possession "by virtue of his employment": Hill's Code, § 1770.

9. EVIDENCE OF EMBEZZLEMENT — SERIES OF FACTS.— Evidence of an entire series of connected transactions by which a trusted employe embezzles his

employer's money is admissible under a charge of embezzlement on a specified day: *State* v. *Dale*, 8 Or. 229, cited and approved.

10. RIGHT OF JURY TO DETERMINE THE LAW*—CODE, § 1375.—In Oregon, under section 1375 of Hill's Code, the jury have the power to find a general verdict, which includes questions of law as well as questions of fact, but they are bound, nevertheless, to receive as law what is laid down as such by the court, and they have no rightful power to determine against the instructions of the court questions of law involved in the case.

APPEAL from Multnomah: MICHAEL G. MUNLY, Judge.

The defendant, Herman Rinehart, was tried, convicted, and by the judgment of the court sentenced to the penitentiary, for the crime of larceny by embezzlement, from which judgment he brings this appeal. The indictment on which he was convicted was returned by the grand jury on December twenty-third, eighteen hundred and ninety-three, and charges that on the seventh day of the preceding September, while the defendant was cashier and bookkeeper for the firm of Dittenhoefer, Hass & Company, he feloniously embezzled and fraudulently converted to his own use, of the moneys of said firm which came into his possession and under his care by virtue of his employ-

*The full instruction given by the trial court on this subject is as follows, the part in italics being an exact copy of section 1375 of Hill's Code: "*Although the jury have the power to find a general verdict, which includes questions of law as well as fact, they are bound, nevertheless, to receive as law what is laid down as such by the court.* You are the exclusive judges of all questions of fact, the credibility of witnesses, and the weight and effect of evidence, as I have instructed you; but you have no rightful power to determine against the instructions of the court questions of law involved in the issue." The defendant insisted that the jury had the right to determine the law, under the following provision of the state constitution, article I, section 16: "In all criminal cases whatever the jury shall have the right to determine the law and the facts, under the direction of the court as to the law, and the right of new trial, as in civil cases." Just a week after this decision was handed down the Supreme Court of the United States exhuastively considered the question of the duty of a jury to receive the law from the court in the case of *Sparf* v. *United States*, 156 U. S. 51, 15 Sup. Ct. 273, and concluded it is the duty of the jury in criminal cases to receive the law from the court, subject to the condition that by a general verdict a jury necessarily determines both law and fact as included in the general issue submitted to them in the particular case. Mr. Justice HARLAN, after thoroughly reviewing the opinions of historians, text writers, and jurists in both England and America, concludes the majority opinion as follows: "The trial was thus conducted upon the theory that it was the duty of the court to expound the law, and of the jury to apply the law as thus declared to the facts as ascertained by them. In this separation of the functions of court and of jury is found the chief

ment, the sum of nine thousand dollars.   Prior to the
finding of this indictment the grand jury had returned
into court three other indictments against defendant
charging him with the crime of larceny by embezzlement
from the same parties and under the same employment.
The first of these indictments was returned on September
thirtieth, eighteen hundred and ninety-three, and charged
the crime to have been committed by the embezzlement of
fifteen hundred dollars between the first day of April and
the twelfth day of August of that year.   On October
twelfth the court dismissed this indictment,—on motion of
the district attorney,—without assigning any reason there-
for, so far as the record discloses, the entry in the journal
being that it was done "upon good and sufficient reason
shown the court."   The second indictment was returned
on October ninth, eighteen hundred and ninety-three, and
charged the crime to have been committed by the embez-
zlement of eight thousand eight hundred and sixty-seven
dollars and sixty-eight cents between the seventeenth day
of October, eighteen hundred and eighty-seven, and the
twelfth day of August, eighteen hundred and ninety-three.

value as well as safety of the jury system.   These functions cannot be confounded or
disregarded without endangering the stability of public justice, as well as the security
of private and personal rights."   The dissenting opinion of Judges GRAY and SHIRAS
is an equally scholarly and complete historical analysis of the opposing views on the
subject, leading to the conclusion that a defendant has a "right to have the jury de-
cide the law involved in the general issue."   The Supreme Court of Pennsylvania, in
*Commonwealth* v. *McMannus*, 143 Pa. St. 64, 14 L. R. A. 89, (a case of murder,) carefully
examined the question and concluded "that the jury never were and are not now
judges of the law in any case, civil or criminal, except incidentally, as involved in the
mixed determination of law and fact by a general verdict."   The most celebrated case
on the other side of the question was *State* v. *Croteau*, 23 Vt. 14, 54 Am. Dec. 90, but even
that has at least been overruled, *State* v. *Burpee*, 65 Vt. 1, in an opinion concluding :
"We are thus led to the conclusion that the doctrine that jurors are the judges of the
law in criminal cases is untenable; that it is contrary to the fundamental maxims of
the common law from which it is claimed to take its origin; contrary to the uniform
practice and decisions of the courts of Great Britain, where our jury system had its
beginning and where it matured; contrary to the great weight of authority in this
country; and contrary to the spirit and constitution of the United States."   See also
an able article by Chief Justice WADE of Montana, in 3 Criminal Law Magazine, 484,
and a note to the case of *Kane* v. *Commonwealth* by the late Dr. Francis Wharton in
1 Criminal Law Magazine, 51.— REPORTER.

To this indictment the defendant demurred on the ground, among other things, that it charged more than one crime, and also that it did not state facts sufficient to constitute a crime, and, his demurrer being overruled, he entered a plea of not guilty. Thereafter, and while the indictment was pending and undisposed of, the grand jury returned the indictment upon which defendant was finally tried and convicted. The third indictment was also returned on the said ninth day of October, eighteen hundred and ninety-three, and charged the crime to have been committed by the embezzlement of forty-seven hundred and fifty-three dollars and six cents between the fifteenth day of February, eighteen hundred and ninety-two, and the twelfth day of August, eighteen hundred and ninety-three. To this indictment the defendant entered a plea of not guilty, and the cause was tried and submitted to a jury, who failed to agree, after being together eight hours; and the court, deeming that a sufficient time for deliberation, and being about to adjourn, had the jury brought into court by the officer having them in charge, and it satisfactorily appearing to the court that there was no probability of an agreement, and such finding being entered in the journal, they were discharged from further consideration of the case, the defendant and his counsel being present, and making no objection thereto. Afterwards the indictment on which the judgment is based from which this appeal is taken was returned by the grand jury, whereupon the court, on motion of the district attorney, dismissed the two former indictments then pending against the defendant, and discharged him from custody thereunder; the reason for dismissing them, as entered in the journal, being that they were partly for the same offense charged in the indictment last returned, and that justice required that the defendant should not be held upon and put to the trouble and expense of preparing for trial on

all the indictments.    The defendant being called upon to
plead to the indictment still pending against him, filed a
demurrer, and this having been overruled, he offered to
file what counsel calls "a written plea of former jeop-
ardy." In this alleged plea he sets forth, with much par-
ticularity, copies of the former indictments against him,
the order of the court dismissing the same, and a detailed
history of the trial which resulted in a disagreement and
discharge of the jury, and alleges that such jury did not
have a reasonable time in which to deliberate upon their
verdict before being discharged by the court.    This plea
the court refused to receive or consider, and defendant
thereupon entered a plea of not guilty and former acquit-
tal, and upon these issues the cause was tried, and the
defendant convicted.                              AFFIRMED.

For appellant there was a brief signed by *Messrs. Alex.
Bernstein* and *Whalley, Strahan & Pipes*, and an oral argu-
ment by *Mr. Martin L. Pipes*, and *Mr. Bernstein*.

For the state there was a brief signed by *Messrs. Geo. E.
Chamberlain*, attorney-general, *Wilson T. Hume*, district at-
torney, and *McGinn, Sears & Simon* of counsel, and an oral
argument by *Mr. Hume*, and *Mr. Henry E. McGinn*.

Opinion by MR. CHIEF JUSTICE BEAN.

1.    It is contended, in the first place, that the judgment
should be reversed because it does not appear from the
transcript that the indictment upon which the defendant
was tried and convicted was found and returned by the
grand jury in the manner provided in chapter VII of the
Criminal Code.    This chapter provides that an indictment,
when found by the grand jury, must be presented by the
foreman in their presence, filed with the clerk, and remain
in his office as a public record.    But it is also provided

that an objection on account of a failure to comply with this chapter must be taken advantage of by motion to set aside the indictment, and, if not so made, the defendant is precluded from afterwards taking the objection: Hill's Code, § 1315. No such motion was made in this case, and hence the objection was waived; and besides, the statute governing appeals in criminal cases provides what the transcript shall contain (Hill's Code, §§ 1444, 1413); and the record of the finding of an indictment is not made a part thereof, hence the question here suggested is not properly before us, and, in the absence of an affirmative showing to the contrary, we will assume that all proceedings in a criminal case preliminary to the matters required to be shown by the transcript were regularly had and taken.

2. It is contended that the dismissal by the court of the first three indictments against the defendant is a bar to this prosecution, because, as defendant claims, the orders of dismissal do not set forth any legal reason therefor, and do not show that the indictments were dismissed in furtherance of justice. The statute provides that a criminal action, after indictment, can only be dismissed by the court either on its own motion or on the application of the district attorney, and in furtherance of justice, and that the reason of the dismissal must be set forth in the journal; but such a dismissal is not a bar to another prosecution for the same offense, if the crime charged be a felony: Hill's Code, §§ 1527, 1528, and 1529. From these provisions of the statute it is apparent that an order dismissing an indictment for felony does not bar another prosecution for the same offense, when made in the manner and for the reason provided by the statute, and certainly no greater force or effect can be successfully claimed for a dismissal not authorized by law. By all the authorities, the mere commencement of a criminal pro-

ceeding does not put the defendant in jeopardy while there is no jury to decide the question of guilt, and therefore the dismissal or discontinuance of such a proceeding before jeopardy attaches cannot be pleaded in bar of another prosecution for the same offense, unless by the provisions of some statute to that effect: Bishop on Criminal Law (5th ed.), § 1014; Wharton on Criminal Pleadings and Practice, § 517. Nor, in our opinion, does any different rule obtain, although the indictment may be dismissed after the overruling of a demurrer, or after a mistrial because of the inability of the jury to agree upon a verdict. If, therefore, it be conceded that the indictments were improperly dismissed, — a question we pass without deciding, — such dismissals did not, in our opinion, bar a further prosecution for the same offense on a new indictment.

3.   It is also claimed that the power of the grand jury is at an end when it returns an indictment into court, and that it cannot afterwards return another indictment against the same defendant for the same offense, unless by order of the court the case is resubmitted to them.   We can find no warrant in law for this contention.   By their oaths grand jurors are bound to true presentment or indictment make of all crimes committed or triable within their county that shall come to their knowledge (Hill's Code, § 1236); and in discharge of this obligation they not only have the right, but it is their duty, to return a new indictment against a defendant, if, in their opinion, the former indictment, which is still pending and undisposed of, is defective or insufficient, unless some proceeding has been had on such indictment which amounts to a bar to further prosecution.   This is said to be the better and more usual practice (*Perkins* v. *State*, 66 Ala. 457; *Stuart* v. *Commonwealth*, 28 Grat. 950); and the power of the grand jury in this respect is not dependent upon the order

26 OR.—60.

of the court resubmitting the cause to them: *State* v. *Collis*, 73 Iowa, 542, 35 N. W. 625.

4.   It is next contended that the discharge of the jury impaneled on the trial of the third indictment is a bar to this prosecution, because, under the facts as stated in the plea of the defendant, it is claimed they did not deliberate upon their verdict a reasonable or sufficient length of time before they were discharged by the court. It must be conceded that in this state the inability of a jury in a criminal action to agree upon a verdict after mature deliberation is a sufficient reason for their discharge by the court, and that such a discharge is not a bar to a further prosecution for the same offense: *State* v. *Shaffer*, 23 Or. 555, 32 Pac. 545.   But the contention for the defendant is that the propriety of such discharge rests in the sound legal discretion of the trial court, subject to review by this court, and that the necessity therefor may be made an issue, and tried on a plea of former jeopardy.   There is some diversity of opinion and practice upon this question, but we believe the better view to be that when the jury, after having deliberated upon their verdict such a length of time as the trial court may deem reasonable, shall make known in open court, in the presence of the defendant, their inability to agree, and the court, having in view all the circumstances surrounding the case, and being satisfied with such report, causes a finding to that effect to be entered in the journal, and thereupon discharges the jury, the apparent jeopardy, which the record shows attached when the jury were impaneled, is annulled, and the defendant may again be put on trial for the same offense; and in such case the findings of the trial court are not subject to review by this court, and cannot be questioned on a plea of former jeopardy.   Mr. Bishop says: "The result of the authorities would seem to be that when he (the judge) concurs in and affirms the jury's

conclusion of inability to agree, and discharges them, the fact so found, the existence whereof nullifies the seeming jeopardy, is absolute and irreversible": 1 Bishop's New Criminal Law, § 1041.    In Michigan the jeopardy attaches when the jury is impaneled and sworn: *People* v. *Jones*, 48 Mich. 554, 12 N. W. 848; and in *People* v. *Harding*, 53 Mich. 487, 18 N. W. 555 and 19 N. W. 155, Mr. Justice COOLEY, in discussing the right of an appellate court to review the action of a trial court in discharging a jury, says: "There is no doubt the report of the jury that they cannot agree is the proper evidence upon which the judge should act in determining upon the impossibility of their reaching a verdict.    But he may not be satisfied with their first report, and has a right to keep them together for further consultation as long as in his opinion there is reasonable ground for believing they may finally agree.    The whole subject, however, is referred to his judgment; and when he decides, no one can question his conclusion.    And if, in this case, he had directed an entry upon the journal of the court that, being satisfied the jury could not agree, he directed their discharge, no question could be made of the right to proceed to a new trial."    To the same effect is Wharton's Criminal Pleading and Practice, § 725; *Windsor* v. *Queen*, L. R. 1 Q. B. 289; *Williford* v. *State*, 23 Ga. 3; *United States* v. *Haskell*, 4 Wash. C. C. 402, Fed. Cas. No. 15321.

The right of a trial court, as a matter of law, to discharge a jury is conceded whenever it is found impossible for them to agree upon a verdict; and whether it is possible to agree is necessarily a question of fact, or of mixed law and fact, to be determined by the trial court from the facts and circumstances of the particular case, and, when so determined, it is, in our opinion, conclusive. If not, how is it to be reviewed?    Certainly not by this court on appeal, for we have no authority to review the ·

findings of fact of a trial court in a criminal action; and it would indeed be an anomalous and unheard of proceeding to submit the question to a jury on a plea of former jeopardy, and allow it to determine whether the court was mistaken in its findings upon the subject. The question is exclusively for the trial court; and when it discharges a jury, because it is satisfied they cannot agree, and directs an entry to that effect to be made in the journal, no question can be made of the right to try the defendant again for the same offense. It is a power that of course ought to be, and we believe is, used by trial courts with extreme caution, and only in cases of necessity; but it is a power which they have a right to exercise, and one which, in our opinion, is essential for the convenient working of the administration of justice. The security of the public and of a defendant against its abuse lies in the honesty and integrity of those to whom it has been committed. In this case the record shows the jury were discharged because "it satisfactorily appeared to the court that there was no probability of an agreement," after they had been out about eight hours, "being such a period as the court deemed proper," and therefore under the law, as we understand it, such discharge is not a bar to a further prosecution for the same offense either on the same or another indictment.

5. It is also contended that the indictment does not state facts sufficient to constitute a crime, because it does not contain the words "feloniously take, steal, and carry away." Under the English embezzlement statutes, and under similar statutes in many of the states in this country, the crime charged is larceny, and it is therefore thought necessary to allege in the indictment, in addition to the facts constituting the statutory offense of embezzlement, that "the defendant feloniously did steal, take, and carry away" the property which is the subject of the indictment;

thus, in effect, it would seem, charging two offenses: *Commonwealth* v. *Pratt*, 132 Mass. 246; Bishop's Directions and Forms, §§ 401, 402. But in this state it has been held, under our statute, (Hill's Code, § 1770,) that if the facts charged in the indictment describe the crime as defined in the statute, it is sufficient, and that the words "shall be deemed guilty of larceny" are used in the statute simply to determine the degree of the offense and the punishment thereof: *State* v. *Sweet*, 2 Or. 127. This seems to us a reasonable construction of the statute, and in harmony with the general rule that it is sufficient to charge a statutory offense in the language of the statute.

6. The next assignment of error is the refusal of the trial court to direct a verdict of not guilty on defendant's motion, based upon insufficiency of the evidence to prove the commission of the crime. There is no substantial conflict in the testimony. The defendant did not contro_ vert or attempt to deny a single inculpatory fact put in proof by the prosecution, but he contends that, inasmuch as the only evidence tending to show the embezzlement is the series of false entries in the books of the firm kept by himself in the course of his employment, such entries are extra-judicial statements, in the nature of a confession, and not sufficient to convict him, unless corroborated by other evidence tending to show that the money or property of his employer was actually stolen or embezzled by some one: Code, § 1368. In other words, the contention is that, although it appears from the books of the firm, kept by the defendant in the course of his employment, that he appropriated to his own use large sums of money belonging to his employer, which fact he attempted to conceal by false and fraudulent entries, such evidence is insufficient to convict unless there is other evidence that the firm actually lost some money. We cannot concur in this position. A "confession," in a legal sense, is re-

stricted to an acknowledgment of guilt made by a person after an offense has been committed, and does not apply to a mere statement or declaration of an independent fact from which such guilt may be inferred: 1 Greenleaf on Evidence, § 170; *People* v. *Strong,* 30 Cal. 151; *State* v. *Mims,* 26 Minn. 183, 2 N. W. 494, 683. The entries of the defendant in the books of account which he was required to keep are not confessions or admissions of guilt, but are perfectly innocent in themselves, and it is only because they are shown to be false and fraudulent that the inference is irresistible, from the manner in which they were made, that they were intended to cover up his misappropriation of the funds of his employer. The books contain a record of the transactions of the firm, made by the defendant in the discharge of his duty, and it is only from these books that the condition of the business can be ascertained or determined, or the shortage shown. And if an agent or employé of such firm, intrusted with the duty of receiving and paying out money, and keeping an account thereof, cannot be convicted of the crime of embezzlement when the books kept by him show a systematic and continued appropriation of its funds to his own use, and a concealment thereof from his employer by means of false and fraudulent entries and false balances, because the employer is unable to show by some other testimony the loss of money, then surely one of the principal objects sought to be accomplished by the statute has failed, and the criminal law affords but little protection to the business community. There are some cases which hold that where the agent or servant has received money for his employer, and satisfactorily accounted for it upon the books of account kept by him in behalf of his principal, he cannot be convicted of embezzlement, although these cases are declared not to be law in *Hemingway* v. *State,* 68 Miss. 371, 8 So. 317. The defendant in that case was convicted upon

no other evidence than his own books, which had been correctly kept, and which showed a balance due from him to his principal, for which he did not account. But false entries made by an employé in the books of his employer, when unexplained, have always been considered the strongest evidence in such cases. "The proof commonly relied upon and held sufficient," says Mr. Bishop, "is either that the servant has wilfully made in his books false entries, or else that he has denied or wilfully omitted to acknowledge the receipt of the embezzled article or fund": 2 Bishop on Criminal Law (7th ed.), § 376. Indeed, in a majority of the cases no other evidence is possible or can be obtained. We are clearly of the opinion, therefore, that the books of account kept by the defendant are sufficient to prove the *corpus delicti.*

7. But defendant further contends that, even if they are competent evidence for that purpose, they do not show that he embezzled and appropriated to his own use any of the money of his employer. We do not propose to enter upon a discussion of this question, because, the books being competent evidence, it was a question for the jury as to whether they were sufficient to prove the crime charged against the defendant; but, in our opinion, no other conclusion seems possible in the light of the evidence of the expert, whose testimony and summary, taken from the books, were competent evidence to show the condition of the account: *State* v. *Findley* (Mo. Sup.), 14 S. W. 185; *Hollingsworth* v. *State,* 111 Ind. 289, 12 N. E. 490; *Boston Railroad Corporation* v. *Dana,* 1 Gray, 104. The defendant did not undertake to explain any of the discrepancies in the books, or account for the alleged shortage or false entries, but contented himself on the trial with a purely technical defense. It is certainly not unjust or unreasonable that a servant shall be tried by the record that he has made in the discharge of his duties, and that the evidence

of his own books, when they contain false and fraudulent entries, shall be sufficient, in the absence of other testimony, to make out a *prima facie* case of guilt and authorize a conviction. It seems to us upon the whole testimony the proof is conclusive that soon after the defendant entered the service of the firm of Dittenhoefer, Haas & Company he commenced to appropriate to his own use a portion of the money received by him in the course of his employment, and, to conceal his crime, adopted a system of false entries as to the amount of money paid out by him, deceiving his principal each month when required to take off the trial balance, by swelling the merchandise account to cover the amount thus appropriated.

8. It is also claimed in support of the motion for a verdict of not guilty that the property alleged to have been embezzled by the defendant did not come into his possession by virtue of his employment. It was the defendant's duty to receive and pay out all moneys of the firm, keeping an account thereof. Whenever money was received it was delivered to him, and he was supposed to make the proper entry in the books of the firm, and place it in a money drawer in the safe, to which he had access, and over which he had control, and from which he took money to pay bills or accounts against the firm. When he was in the office no money was taken from the drawer for such purpose except by him; but in case of his absence the members of the firm, who also had access to the money drawer, would sometimes take money for that purpose, leaving a tag in place thereof, but the evidence shows that the shortage did not occur on that account. Whatever money was received by him came into his possession by virtue of his employment, and in the discharge of his duties, and if he embezzled or fraudulently converted the same or any portion thereof to his own use, he is guilty of the crime charged, although other persons may have like-

wise had access to the money drawer: *Ker* v. *People*, 110 Ill. 627, 51 Am. Rep. 706.

9. It is next insisted that it was error to permit the state, over the objections of the defendant, to introduce evidence tending to show separate and distinct acts of embezzlement as proof of a substantive offense charged. A satisfactory answer to this objection is that the evidence shows the crime to have been a continuing offense, committed by a trusted servant by means of a series of connected transactions, and in such case a charge of embezzlement on a certain day will cover and admit evidence of the whole. As said by the supreme court of Ohio in a similar case, "It was in fact and in law a single embezzlement. Were it otherwise, the particular conversions could never be ascertained or proven, and there would have to be, in some cases, almost as many counts in an indictment as there were dollars of the money embezzled": *Brown* v. *State*, 18 Ohio St. 496. And in *Ker* v. *People*, 110 Ill. 646, 51 Am. Rep. 706, it is said: "The body of the crime consists of many acts, done by virtue of the confidential relation existing between the employer and the employé, with funds, money, or securities over which the servant is given care or custody, in whole or in part, by virtue of his employment. The separate acts may not be susceptible of direct proof, but the aggregate result is, and that is embezzlement." See also 1 Bishop on Criminal Procedure, § 397; *State* v. *Dale*, 8 Or. 229; *Jackson* v. *State*, 76 Ga. 573; *State* v. *Pratt*, 98 Mo. 482, 11 S. W. 977; *Campbell* v. *State*, 35 Ohio St. 70. This doctrine is not only supported by reason and authority, but is eminently proper and just. The rule contended for by the defendant would render it exceedingly difficult, if at all possible, in many cases, to secure conviction of a confidential agent or servant intrusted by his employer with the custody and con-

trol of funds. The trust and confidence reposed in him necessarily affords the amplest opportunity to misappropriate the funds intrusted to his care, and makes it almost if not quite impossible to prove just when and how it was done, but the ultimate fact of embezzlement is susceptible of direct proof, and that is the act against which the statute is directed. The crime may, as in the case at bar, consist of many acts done in a series of years, and the fact at last be discovered that the employer's funds have been embezzled, and yet it be impossible for the prosecution to prove the exact time or manner of each or any separate act of conversion. In such case, if it should be compelled to elect, and rely for conviction upon any one single act, the accused, although he might be admittedly guilty of embezzling large sums of money in the aggregate, would probably escape conviction. The law does not afford exemption from just and merited punishment on mere technical grounds, which do not in any way affect the guilt or innocence of the defendant or the merits of the case.

10. The general charge of the court, although subject to some hypercritical objection, was substantially a correct statement of the law in the case, and contains no error for which it should be reversed. The instruction that "although the jury have the power to find a general verdict, which includes questions of law as well as questions of fact, they are bound, nevertheless, to receive as law what is laid down by the court," is but a statement of the rule provided by statute (section 1375, Hill's Code), and hence was not error. Many other assignments of error only present in another form the questions already considered, and those which do not are, in our opinion, without merit. The range which the cross-examination of the witness Pagett should take rested largely in the discretion of the trial court, and it does not appear to us

that any substantial right of the defendant was affected by such cross-examination. Having examined carefully all the questions presented by the record in this case, and finding no error, the judgment is affirmed.

AFFIRMED.

---

[Argued October 30; decided December 3, 1894; rehearing denied.]