Statement of the case.

[Argued February 9, 1893; decided March 7, 1893.]

## STATE v. CYRUS SHAFFER.

[S. C. 32 Pac. Rep. 545.]

| 23 | 555 |
| a26 | 474 |
| 32* | 545 |
| 38* | 824 |
| 23 | 555 |
| 28 | 229 |
| 29 | 107 |
| 23 | 555 |
| 32 | 194 |
| 23 | 555 |
| f33 | 560 |

1. CRIMINAL LAW — JEOPARDY — DISAGREEMENT OF JURY — CODE, § 206.—The inability of a jury to agree upon a verdict is a sufficient reason for their discharge, and trying the defendant for the same offense before another jury is not placing him twice in jeopardy. Hill's Code, § 206, giving the trial court power to discharge a jury upon their inability to agree, is not in conflict with article I., section 12, of the state constitution, providing that no man shall be put in jeopardy twice for the same offense.

2. SEPARATION OF JURY IN CAPITAL CASE — DISCRETION OF COURT — CODE, § 198.—The separating of the jury during the trial, with proper admonition, is properly within the discretion of the court even in capital cases: Code, § 198.

3. DYING DECLARATIONS — ADMISSIBILITY — DISCRETION OF COURT.—The admissibility of dying declarations is always a preliminary question addressed to the court, and this preliminary inquiry may be conducted either in the presence and hearing of the jury, or otherwise, as the discretion of the trial judge may dictate.

4. IDEM — CREDIBILITY — IMPEACHING DECEASED.—The credibility of dying declarations is always a question for the jury, and the credit of the deceased may be impeached by showing that he made contradictory statements as to the homicide and its cause; but the fact that, at a time other than when the declarations were made, he expressed a hope or belief of his recovery is not an impeachment, for he may still have considered death impending at the time the declarations were made.

Josephine County: LIONEL R. WEBSTER, Judge.

Defendant appeals.     Affirmed.

*Henry L. Benson*, district attorney, for Respondent.

*Smith & Colvig*, for Appellant.

The defendant was indicted for murder in the first degree of one Jacob Moll, and, upon his arraignment, pleaded not guilty. A trial was had before a jury, which, being unable to agree upon a verdict, was discharged by the trial court. A second jury was ordered impaneled, and, when the defendant was arraigned before them for trial, his counsel filed a motion to discharge him on the ground that he had once been in jeopardy for the same offense. The court overruled the motion, and upon the

trial the jury found the defendant guilty of murder in the second degree, whereupon the court sentenced him to the penitentiary for life.

LORD, C. J.—1. The first error assigned is the overruling of said motion. The record properly discloses the inability of the first jury to agree upon a verdict before they were discharged by the court. The contention is that the trial court had no authority to discharge the first jury sworn in the case, without the consent of the defendant, because of their inability to agree upon a verdict. It is conceded that the court, under section 206, Hill's Code, is authorized to discharge a jury when it satisfactorily appears that there is no probability of their agreement; but it is claimed that, in so far as this section confers such power on the court, it is in conflict with section 12, article I. of the state constitution, which provides that "no person shall be put in jeopardy twice for the same offense." There is some diversity of opinion and practice in the courts upon this subject. In *Com.* v *Cook*, 6 Serg. & R. 577, it was held that the court, without the consent of the prisoner, had no power to discharge the jury, because they had not agreed, and said they could not agree upon a verdict, and the doctrine of this case was expressly approved in the subsequent case of *Com.* v *Clue*, 3 Rawle, 498. There are some other cases sustaining the same view. But the inability of the jury to agree is now gen erally regarded as such a necessity as will warrant the discharge of the jury, and such discharge will be no impediment to a second trial for the same offense. Mr. Bishop says that "in England and Ireland, at present, and in the greater part of our states, when a reasonable period for discussion and reflection has been given to the jury, and they have in open court declared themselves unable to come to an agreement, and the judge is satisfied of the truth of the declaration, they may be discharged, and the prisoner held to be tried anew": Bishop, Crim. Law, § 1033; *Ex parte McLaughlin*, 41 Cal. 216. We

think the authority conferred by our statute upon courts of justice to discharge a jury from giving a verdict whenever it shall satisfactorily appear, in their opinion, that there is no probability of their agreement, is valid, and sustained by the weight of authority and practice. But "the power," as Mr. Justice STORY says, "ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and in capital cases, especially, courts should be extremely careful how they interfere with any of the chances of life in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound and conscientious exercise of their discretion rests, in this, as in other cases, upon the responsibility of the judges, upon their oaths of office": *United States* v. *Perez*, 9 Wheat. 581.

2. The next objection is that the court allowed the jury to separate during the trial of the defendant. This is a matter within the discretion of the court, who may permit the jury to separate pending the trial, upon properly admonishing them touching their duties. It is expressly provided by our code that the jury may be kept together in charge of a proper officer, or may, in the discretion of the court, at any time before the submission of the cause to them, be permitted to separate, but in either case they may be admonished by the court that it is their duty not to converse with any other person, or among themselves, on any subject connected with the trial, or to express any opinion therein until the case is finally submitted to them: Section 198, Hill's Code; *Stephens* v. *People*, 19 N. Y. 549.

3. The next assignment of error is that the court erred in overruling the objection of the defendant to the dying declarations of the deceased. The ground of the objection is that no sufficient foundation had been laid for their introduction. The rule is well settled that, to render dying declarations admissible evidence, it must appear that they were made by the person injured, under

a sense of impending death, and without any expectation
or hope of recovery: 1 Greenleaf, Ev. § 158; Roscoe,
Crim. Ev. 25. The admissibility of dying declarations is
always a question for the court, as a preliminary inquiry,
to ascertain whether the deceased, at the time of making
them, was conscious of his danger, and had given up all
hope of recovery. But the courts are strict in requiring
that, before admitting them, it shall be made clearly to
appear that the declarant was, in fact, at the time under
the sense of impending dissolution, and entertained no
hope of recovery: *Swisher's Case*, 26 Gratt. 970; *State* v.
*Kilgore*, 70 Mo. 553. The circumstances proven in this
case before the court come within this rule, and, there-
fore, the proper foundation was laid for the introduction
of the dying declarations. In the case at bar it appears
that the trial court conducted such preliminary inquiry
out of the presence and hearing of the jury. At the
argument some question was raised whether this was the
proper practice. In some jurisdictions it is considered
good practice to have such preliminary examinations con-
ducted out of the hearing of the jury, while in others it
rests in the discretion of the court whether such exam-
inations shall be conducted in or out of the hearing of the
jury. In *Swisher* v. *Com. supra*, the witnesses were ex-
amined by the judge in the absence of the jury. In
*Johnson* v. *State*, 47 Ala. 10, the evidence was heard by
the judge in the presence of the jury, who were cautioned
not to regard it in forming their verdict. In *People* v.
*Smith*, 104 N. Y. 493 (10 N. E. Rep. 873), it was held that
such preliminary examination may, in the discretion of
the court, be conducted in the presence of the jury,
FINCH, J., saying that ''during the trial of the prelim-
inary issue the jury stood merely in the attitude of spec-
tators. They had no concern with it, and knew from the
statements of the court that they had not. They under-
stood that out of its result something might come before
them as evidence, or nothing, and that until the judge
ruled, the facts developed were for his consideration and

not for theirs." In *Doles* v. *The State*, 97 Ind. 555, it was held that it is within the discretion of the trial court whether it will allow the state to introduce such preliminary proof in the presence and hearing of the jury, or will send the jury out during the introduction of such proof. We think this is a matter addressed to the discretion of the trial judge, who, being cognizant of all the circumstances, is better able to decide it.

4.   The next error assigned is the refusal of the court to allow the witness R. T. Armstrong to answer a certain question propounded to him by counsel for the defendant. The record discloses that R. T. Armstrong, a witness for the defendant, testified that he was present with W. F. Horton and Dr. Flannigan at the bedside of Jacob Moll about 3 o'clock Monday afternoon, the day before Moll died; that he heard a conversation between Moll and Dr. Flannigan about the result of Moll's wound and his hope of recovery, when the counsel for the defendant asked the witness: "Please state what that conversation was," to which question the prosecuting attorney objected on the ground that it was irrelevant and immaterial, which objection was sustained by the court; whereupon the defendant, by his counsel, stated to the court that he proposed to show by this question "that the deceased expressed a belief that he was going to recover at that time, and immediately after the statement related by Dr. Flannigan was made." The ground of objection, therefore, to the ruling of the trial court is, that the answer to the question would have shown that he entertained hope of recovery at the time the declarant made the dying declarations to which Dr. Flannigan testified. The record, however, discloses that the dying declarations which were admitted in evidence were made between 9 and 10 o'clock Monday morning, while the conversation by which it is offered to prove that the deceased expressed a belief that he was going to recover occurred between 3 and 4 o'clock Monday afternoon. There is nothing to show that the witness Armstrong

was present in the morning when the dying declarations were made by Moll to his physician, Dr. Flannigan, nor any evidence tending to show that Moll entertained at that time any expectation or hope of recovery. Manifestly, the facts upon which this objection is based are not supported by the record, and, unless there is some other reason for the exclusion of the testimony, there was no error.

The rule of law undoubtedly is that the credibility of dying declarations is to be determined by the jury in view of all the circumstances under which they were made. The fact that the declarant, at some time subsequently to the making of the dying declarations, may have expressed some hope of recovery, in no way tends to show that he entertained any hope or expectation of recovery when the dying declarations were made. The later circumstance is a separate and distinct fact or occurrence, which, standing alone, does not impeach or contradict the dying declarations, or show that when the declarant made them he entertained hope of recovery. It is no doubt true that when dying declarations have been admitted in evidence, it is competent to show that the deceased made statements concerning the transaction conflicting with such dying declarations The accused has the right to impeach the credit of the deceased by showing that he made contradictory statements as to the homicide and its cause. "Statements by the defendant," says Mr. Bishop, "contradictory of dying declarations, and contradictions in the latter, may be shown to detract from their weight with the jury": 1 Bishop, Crim. Pro. § 1209. But, for the reason suggested, it is not perceived how the fact sought to be proved tends to impeach or contradict the dying declarations. For similar reasons, there was no error in allowing Dr. Flannigan to answer the other question propounded to him. In was not connected with any of the circumstances under which the dying declarations were made, so as to indicate the

declarant's state of mind, or to impeach the fairness of Dr. Flannigan's statement of such declarations.

It is further objected that the court, in one of its instructions, refers to the statement of the deceased, detailed by the witness Dr. Flannigan, as dying declarations. By this instruction it is claimed that the trial court invaded the province of the jury, by taking from them the right to determine whether the statement was made under a sense of impending death. The court merely referred to the statement as "the dying declaration of Jacob Moll, deceased." It is not perceived, after the court admitted the statement as the dying declaration of the deceased, that there was or could be any error in referring to it as such.

Upon the whole, we are unable to discover that there was any error. The judgment must be affirmed.