Argued and submitted October 31, 2003, order of dismissal with prejudice
reversed; remanded for new trial February 25, 2004

# STATE OF OREGON,
*Appellant,*

*v.*

# JOHN ANGELO O'DONNELL,
*Respondent.*

## 9808-36958; A113249

85 P3d 323

Rolf C. Moan, Assistant Attorney General, argued the cause for appellant. With him on the opening brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General. With him on appellant's response to cross-assignment of error were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Rankin Johnson IV, Deputy Public Defender, argued the cause for respondent. With him on the brief was Peter A. Ozanne, Executive Director, Office of Public Defense Services.

Before Haselton, Presiding Judge, and Linder and Ortega, Judges.

HASELTON, P. J.

## HASELTON, P. J.

The state appeals from an order dismissing with prejudice, and thus barring retrial of, three counts of a criminal indictment against defendant on which the jury failed to reach a verdict following a full trial. The court determined that (1) retrial as to all three counts was barred by the statutory double jeopardy provisions of ORS 131.515 because the court, in discharging the jury, failed to make a finding that "[t]he jury [was] unable to agree upon a verdict," ORS 131.525(1)(b)(D); and (2) in the alternative, even if ORS 131.515 did not preclude retrial as to all three charges, retrial of the felony murder charge against defendant was precluded by constitutional double jeopardy protections. As described below, we conclude that the trial court erred in both of its alternative holdings. Consequently, we reverse and remand for retrial of the three dismissed counts.

This case arises from an incident on August 4, 1998, involving defendant and his codefendant, Fox, and two victims, Herminio-Guadarrama and Castaneda-Garza. Defendant and Fox allegedly robbed, or attempted to rob, Herminio-Guadarrama at gunpoint and, in the course of that crime, Fox intentionally shot and killed Herminio-Guadarrama. Further, defendant and Fox allegedly robbed, or attempted to rob, Castaneda-Garza at gunpoint and assaulted Castaneda-Garza with a deadly or dangerous weapon.

Defendant and Fox were charged in a five-count indictment. Count 1 alleged that Fox had committed aggravated murder with a firearm, ORS 163.095(2). Count 2 alleged that defendant had committed felony murder with a firearm, ORS 163.115(1)(b):

"The said defendant, JOHN ANGELO O'DONNELL, on or about August 4, 1998, in the County of Multnomah, State of Oregon, did unlawfully and knowingly commit and attempt to commit the crime of Robbery in the First Degree, and in the course of and in the furtherance of said crime which the said defendant was committing and attempting to commit, a participant in said crime, MARK EDWARD FOX, did cause the death of another human being to-wit: MILLAN JOSE HERMINIO-GUADARRAMA, not a participant in

the crime, and during the commission of this felony the defendant used and threatened the use of a firearm, contrary to the Statutes in such cases made and provided and against the peace and dignity of the State of Oregon[.]"

Count 3 charged both defendant and Fox with robbery in the first degree with a firearm, ORS 164.415, with respect to Herminio-Guadarrama. Count 4 charged both defendant and Fox with robbery in the first degree with a firearm with respect to Castaneda-Garza. Finally, Count 5 charged both defendant and Fox with assault in the first degree, ORS 163.185, with respect to Castaneda-Garza.

Before trial, defendant successfully moved for a severance. In mid-September 2000, the charges against defendant were tried to a jury. In Fox's absence, Count 1 of the indictment was inapplicable; consequently, for convenience, the trial court redesignated the felony murder charge against defendant as "Count 1," the first-degree robbery charge pertaining to Herminio-Guadarrama as "Count 2," and the first-degree robbery and first-degree assault charges pertaining to Castaneda-Garza as "Count 3" and "Count 4," respectively.[1] Following presentation of the evidence, the case was submitted to the jury. After two days of deliberation, the jury foreperson sent the following note to the trial judge:

"We have reached a decision on Charge 2 [first-degree robbery as to Herminio-Guadarrama]. We are an impasse on Charges 1-3-&4. The jurors have informed me that they are unable to reach a decision and are unwilling to change their minds. I don't believe more time will help. Everyone has indicated this to me."

The trial judge then called the jury to the courtroom and engaged in the following colloquy:

"[THE COURT]: The jury's last note [stated that] * * * [w]e are at an impasse on charges [one, three, and four]. And the jurors have informed me that they were unable to reach a decision, and they're unwilling to change their minds. * * * Is everyone in agreement with this?

[1] To avoid unnecessary confusion, we employ the same designations that the trial court and the jury employed, notwithstanding that the indictment was never amended to conform to those designations.

"JURORS: Yes.

"[THE COURT]: I see a lot of nodding heads.

"* * * * *

"[THE COURT]: Okay. And you're supplying us with the information that I was about to ask for since everyone assures me that further deliberations would be of no use at all, which is the first thing I usually ask if I didn't have a note that told me that already."

The court read the jurors' "guilty"/"not guilty" votes on each of the four counts: Count 1 (felony murder) 7-5; Count 2 (first-degree robbery against Herminio-Guadarrama) 10-2; Count 3 (first-degree robbery against Castaneda-Garza) 7-5; and Count 4 (first-degree assault against Castaneda-Garza) 8-4. The court then discharged the jury and declared a mistrial as to Counts 1, 3, and 4. Defendant was convicted on Count 2.[2] Following discharge of the jury, the court and counsel set a hearing date to schedule further proceedings for the retrial of Counts 1, 3, and 4.

On September 26, defendant filed a "motion to bar retrial" of all of the unresolved charges, arguing that to allow a retrial of those charges would violate statutory and constitutional double jeopardy protections. The trial judge initially denied that motion. However, several days later, in a letter to counsel, the court expressed concerns regarding the state's ability to retry defendant on the felony murder charge, given the jury's less-than-unanimous verdict on the first-degree robbery charge pertaining to Herminio-Guadarrama. Ultimately, after further briefing and argument on that question alone, the court, on reconsideration, issued an order dismissing *all three* counts against defendant on which the jury had not reached a verdict. That is, the court dismissed not only the felony murder count, but also the robbery and assault charges pertaining to Castaneda-Garza.

In a letter opinion, the trial court described its reasoning. First, the court determined that, in discharging the jury, it had failed to "make a finding that the jury was 'unable

---

[2] ORS 136.450 requires a "concurrence of at least 10 of 12 jurors" for a guilty verdict on the robbery and assault charges. Article I, section 11, of the Oregon Constitution requires a unanimous jury decision on the felony murder charge.

to agree upon a verdict.' " (Quoting ORS 131.525(1)(b)(D).)[3] Consequently, the court concluded that, under *State ex rel Turner v. Frankel*, 322 Or 363, 908 P2d 293 (1995), it had failed to satisfy the requirements of ORS 131.525(1)(b)(D) and, thus, a retrial of all counts was barred under ORS 131.515.[4] In that regard, the court expressed its belief that *Turner* required a "specific, formal finding of [the jury's] inability to agree, made on the record prior to the discharge of the jury" and that the court's remarks in discharging the jury did not embody such a "formal finding."

■    Notwithstanding its disposition of the entire case on statutory grounds, the trial court then proceeded to address constitutional questions.[5] In particular, the court determined that, if, for some reason, ORS 131.525(1)(b)(D) did not preclude retrial of the remaining counts, retrial of the felony murder count would, in all events, be barred by constitutional double jeopardy principles. In so holding, the court reasoned that the jury's 10-2 verdict on the first-degree robbery count constituted an implied acquittal on the felony murder count:

"To allow the state to re-try [defendant] on the Felony Murder charge, when it has had a full and fair opportunity to convince one jury, unanimously, that he is guilty of Robbery I, the necessary constituent element to a finding of guilty on the Felony Murder charge—which requires unanimity—, would be a classic instance of subjecting a defendant to twice being put in jeopardy of his liberty for the same offense.

"* * * [Defendant] was convicted, by a 10-2 vote. Thus, for the purpose of Double Jeopardy analysis, he was either

---

[3] The full text of ORS 131.525(1)(b)(D) is set out below. 192 Or App at 242.

[4] The text of ORS 131.515 is set out below. 192 Or App at 241 n 7.

[5] The trial court justified that approach by explaining that, in the event its disposition on statutory grounds were reversed, it might be "useful" for the parties and the appellate court "to have the thinking of this court" on double jeopardy issues. We understand the trial court's justification. Nevertheless, with respect, it ignores the "first things first" mandate that binds all Oregon courts. *See, e.g.,* *Zockert v. Fanning*, 310 Or 514, 520, 800 P2d 773 (1990); *State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983). Having disposed of the entire case on statutory grounds, the trial court's resolution of constitutional questions—including, most notably, its holding that ORS 131.515(4) is unconstitutional, *see* 192 Or App at 240, 240 n 6—was procedurally erroneous.

convicted—or the fact of only 10 votes in favor of conviction on Robbery I should be seen as analogous to an acquittal. That is, for Double Jeopardy analysis, the state should not be allowed to present the same evidence to a second jury with the hope of persuading all 12 jurors the second time around of defendant's guilt of Robbery I."

(Footnotes omitted.) As a collateral matter, the trial court concluded that, in this context, application of ORS 131.515(4) to permit retrial of the felony murder count would be unconstitutional.[6]

The state appeals, raising two principal arguments. *First*, the trial court erred in granting dismissal of all three remaining counts on statutory grounds, because the record establishes, beyond any rational dispute, that, before the trial court discharged the jury, the court had, in fact, determined that the jury was "unable to agree upon a verdict" on any of those counts. Thus, the requisites of ORS 131.525(1)(b)(D), as explained in *Turner*, were satisfied. *Second*, retrial of the felony murder charge would not violate double jeopardy protections.

Defendant responds both by challenging this court's jurisdiction and by contesting the merits of the state's statutory and constitutional arguments. In addition, defendant cross-assigns error to the trial court's failure to enter a judgment of acquittal pursuant to ORS 136.130 after dismissing the remaining charges with prejudice.

■ We begin with defendant's jurisdictional argument—but, for reasons that will quickly become apparent, our determination of jurisdiction depends on our resolution of the merits. Defendant argues that there is no statutory basis for an appeal of the trial court's order of dismissal. In particular, defendant asserts, the order here is not an appealable "order made prior to trial dismissing or setting aside the accusatory instrument," ORS 138.060(1)(a), because the order here was

---

[6] ORS 131.515(4) states that "[a] finding of guilty of a lesser included offense on any count is an acquittal of the greater inclusive offense only as to that count." The trial court, in referring to subsection (4), stated, "That Robbery I is a lesser included offense of Felony Murder is not open to doubt in Oregon" (citing *State v. Tucker*, 315 Or 321, 331, 845 P2d 904 (1993)). As noted below, 192 Or App at 254-55 n 13, that proposition is very much "open to doubt in Oregon."

rendered *after* trial. The state responds that the order here is an order appealable under ORS 138.060(1)(a) because (1) the term "prior to trial" means "before jeopardy attaches," *see, e.g., State v. Summers,* 151 Or App 301, 305, 948 P2d 754 (1997); (2) a proper termination of the prior proceedings based on the jury's inability to render a verdict, ORS 131.525(1)(b)(D), has the effect of "annulling" jeopardy, *see, e.g., State v. Bannister,* 118 Or App 252, 258, 846 P2d 1189 (1993); and (3) thus, if the prior proceedings were properly terminated, the disputed order was, indeed, "made prior to trial"—*i.e.,* prior to the retrial, at which jeopardy will again attach.

The jurisdictional question was first raised by defendant's motion to determine appellate jurisdiction. ORS 19.235(3). Before oral argument on the merits, this court deferred ruling on that matter, determining that its resolution was "inextricably dependent on resolution of the substantive question on appeal of whether double jeopardy exists without a specific finding of 'unable to agree' to preclude retrial on the three specified counts in this matter." That remains true. Accordingly, in determining jurisdiction, we necessarily return to the merits.

As noted, the trial court dismissed all three remaining charges as being barred by the statutory double jeopardy provision, ORS 131.515.[7] In particular, the court determined that the exception to that bar described in ORS 131.525(1)(b)(D) was inapplicable because the court, in discharging the jury, had failed to make a "formal finding" that the jury was unable to agree. The court's premise that ORS

_____

[7] ORS 131.515 provides:

"(1) No person shall be prosecuted twice for the same offense.

"(2) No person shall be separately prosecuted for two or more offenses based upon the same criminal episode, if the several offenses are reasonably known to the appropriate prosecutor at the time of commencement of the first prosecution and establish proper venue in a single court.

"(3) If a person is prosecuted for an offense consisting of different degrees, the conviction or acquittal resulting therefrom is a bar to a later prosecution for the same offense, for any inferior degree of the offense, for an attempt to commit the offense or for an offense necessarily included therein.

"(4) A finding of guilty of a lesser included offense on any count is an acquittal of the greater inclusive offense only as to that count."

131.525(1)(b)(D) requires a "formal finding" was, in turn, based on its reading of *Turner*.

For the reasons that follow, we conclude that the requisites of ORS 131.525(1)(b)(D) were satisfied notwithstanding the trial court's failure to render a "formal" or explicit finding that the jury was unable to agree. Rather, where, as here, the record unambiguously establishes that the jury was deadlocked without any reasonable prospects of agreeing on a verdict, that the trial court discharged the jury immediately after being so informed, and that there was, and is, no other plausible explanation or justification for the court's action, ORS 131.525(1)(b)(D) is triggered. *Turner* is not to the contrary.

■ ORS 131.525 provides, in part:

"(1) A previous prosecution is not a bar to a subsequent prosecution when the previous prosecution was properly terminated under any of the following circumstances:

"* * * * *

"(b) The trial court *finds* that a termination, other than by judgment of acquittal, is necessary because:

"* * * * *

"(D) The jury is unable to agree upon a verdict."

(Emphasis added.) If the jury's inability to reach a verdict is not the result of prosecutorial or judicial misconduct, ORS 131.525(1)(b)(D) can be "constitutionally applied to *annul* the attachment of jeopardy arising from the original trial." *Bannister*, 118 Or App at 258 (emphasis added). Thus, when the requisites of ORS 131.525(1)(b)(D) are satisfied, "the state's reprosecution of [a] defendant on charges on which the jury was unable to reach a verdict [is] not barred" either by ORS 131.515 or by Article I, section 12, of the Oregon Constitution.[8] *Id.*

The parties' dispute concerning the applicability of ORS 131.525(1)(b)(D) focuses on the meaning of the term "finds." Does that term require the trial court to make an

---

[8] Article I, section 12, provides, in part, "No person shall be put in jeopardy twice for the same offence * * *."

explicit finding of the predicate fact (*viz.*, inability to agree) on the record? Or does it merely require the court to determine that fact, even if only implicitly? In resolving that question of statutory construction, we employ the methodology prescribed by *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993), beginning with the statutory text viewed in context.[9]

"Find" is a remarkably diverse and plastic term in common usage. The meaning that most closely corresponds to the usage in ORS 131.525(1)(b)(D) is

"to arrive at (a conclusion) : come to (a finding) : determine and declare (as a verdict in a judicial proceeding) : agree or settle upon and deliver ‹he was *found* guilty› * * *."

*Webster's Third New Int'l Dictionary* 852 (unabridged ed 1993) (emphasis in original). Thus, there are latent tensions even within the "plain meaning" dictionary definition—there is a difference between "arriv[ing] at a conclusion" (*i.e.*, determining a matter) and "determin[ing] *and* declar[ing]," which connotes not just a determination but also an overt expression of that decision.

■        In all events, regardless of the common understanding of the statutory text, under the "rule of prior construction," prior Oregon Supreme Court interpretations of statutory language become "part of the statute." *S-W Floor Cover Shop v. Natl. Council on Comp. Ins.*, 318 Or 614, 622, 872 P2d

---

[9] We note, parenthetically, that, in at least two pre-*PGE* cases, we or the Supreme Court construed similar "if the court finds" language in criminal statutes as requiring the trial court to render a finding of the predicate fact on the record. *See State v. Huntley*, 302 Or 418, 423, 429-30, 730 P2d 1234 (1986) (construing "if the court finds" language of "dangerous offender" statutes, ORS 161.725 and ORS 161.735, as requiring court to make findings on the record); *State v. Racicot*, 106 Or App 557, 560-61, 809 P2d 726 (1991) (endorsing same construction of "if the court finds" language in previous version of ORS 137.123(5), governing imposition of consecutive sentences).

We further note that the legislature has, on occasion, elected to employ more explicitly directive language in other criminal statutes. *See, e.g.*, ORS 137.712(1)(b) (requiring court to "make * * * findings on the record" to support dispositional departure); ORS 137.750(1) (pertaining to eligibility for earned-time sentence reductions, work release, and related programs; otherwise eligible defendants may participate "unless the court finds on the record in open court" substantial and compelling reasons to the contrary); ORS 161.625(5) (when imposing a fine for a felony "the court shall make a finding" as to the amount of defendant's gain from the crime).

1 (1994). That, in turn, brings us to *Turner*. Because our understanding of *Turner* is central to our disposition, an extensive and detailed description of that case is unavoidable.

In *Turner*, a mandamus proceeding, the relator was a criminal defendant who had been charged with multiple counts of aggravated murder, all arising from the death of a single victim, as well as various sex offenses. 322 Or at 365-66. After six days of deliberation, the jury returned a verdict form that, *inter alia*, did not check either "guilty" or "not guilty" with respect to two of the aggravated murder counts, Counts 1 and 3.[10] *Id.* at 366-67. The following then occurred:

> "[The] defendant judge stated to the jury foreman: 'And I understand *you have reached verdicts* in these cases?' (Emphasis added.) The foreman responded, 'Yes.' After reviewing the forms, defendant judge sent the jury out of the courtroom and stated to counsel that 'in some sense the form is not complete.' She also noted to Relator's counsel that, as to count one, 'that is effectively that *not guilty verdict*, but they have not recorded a check mark.' (Emphasis added.) The district attorney then stated that 'it appears that they're hung as to some of the counts.' When defendant judge began to respond, the district attorney stated, 'That's not clear to me.' Defendant judge then responded, 'That's why I said it *may not be a complete verdict*.' (Emphasis added.)"

*Id.* at 370.

The court then discussed with counsel how to proceed. During that conversation, the court observed,

> " 'I think it's clear from the parentheses [on the verdict form] that they have in fact gotten *either* the requisite number to make a not guilty finding *or* have been unable to reach a verdict.' (Emphasis added.)"

*Id.* Ultimately, the court asked the jury to identify in writing which jurors "agreed and disagreed with your verdicts." After receiving those verdict forms, the court dismissed the jury

---

[10] The procedural posture of the underlying criminal trial in *Turner* was considerably more convoluted than the description presented here. Indeed, the jury failed to return a verdict on a total of four counts. 322 Or at 367-68. However, the mandamus proceeding focused only on the proper disposition as to Counts 1 and 3.

without making an on-the-record finding that the jury was unable to agree on a verdict. The state subsequently moved the court to, among other things, declare a mistrial as to Counts 1 and 3 and to set those counts for retrial. The court granted that motion, notwithstanding the defendant's assertion that those counts should be dismissed with prejudice because any retrial of those counts would violate double jeopardy protections. *Id.* at 368.

The defendant, as relator, then sought a writ of mandamus directing the trial court to dismiss with prejudice Counts 1 and 3 and, concomitantly, to deny the state's motion for declaration of a mistrial as to those counts. 322 Or at 368. The Supreme Court ultimately granted that relief, concluding that retrial of Counts 1 and 3 would violate ORS 131.515(1) because the requisites of ORS 131.525(1)(b)(D) had not been satisfied. *Id.* at 369.

In so holding, the court first reviewed in detail the circumstances surrounding the jury's return of its verdict, emphasizing the trial judge's observation that "it *may not be a complete verdict*" and "it's clear * * * that they have in fact gotten *either* the requisite number to make a not guilty finding *or* have been unable to reach a verdict." *Id.* at 370 (emphasis in *Turner*). Thus, the Supreme Court observed:

> "As can be seen, the record in this case does not demonstrate that defendant judge *found* that the jury was *unable* to agree upon a verdict on counts one and three. It is clear that defendant judge acknowledged that the jury *did not* agree upon a verdict on counts one and three. However, the record contains no indication of an affirmative finding that 'a termination, other than by judgment of acquittal, is necessary because * * * [t]he jury is *unable* to agree upon a verdict' as required by ORS 131.525(1)(b)(D)."

*Id.* at 371-72 (emphasis in *Turner*).

The Supreme Court then discussed several of its own decisions that antedated the enactment of ORS 131.525 in 1973. *See State v. Paquin*, 229 Or 555, 368 P2d 85 (1962); *State v. Chandler et al.*, 128 Or 204, 274 P 303 (1929); *State v. Reinhart*, 26 Or 466, 38 P 822 (1895). Each of those prestatutory cases pertained to the annulment of jeopardy when a jury was unable to reach a verdict. In particular, the *Turner*

court quoted with approval the following language from *Chandler*:

> " 'When a jury is discharged for its inability to agree, trial courts, in entering the order, should be careful that the jeopardy which is attached is *affirmatively shown* to have been nullified.' "

*Turner*, 322 Or at 372 (quoting *Chandler*, 128 Or at 207) (emphasis added). Further, the *Turner* court noted "the most appropriate means" for trial courts to proceed:

> " ' "[W]e believe the better view to be that when the jury, after having deliberated upon their verdict such a length of time as the trial court may deem reasonable, shall make known in open court, in the presence of the defendant, their inability to agree and the court, having in view all of the circumstances surrounding the case, and being satisfied with such report, *causes a finding to that effect to be entered in the journal*, and thereupon discharges the jury, the apparent jeopardy, which the record shows attached when the jury [was] impaneled, is annulled * * *." ' "

322 Or at 372 (quoting *Chandler*, 128 Or at 206-07 (quoting *Reinhart*, 26 Or at 474)) (emphasis added) (brackets in *Turner*).

Given that background, the *Turner* court noted that, although those cases were decided before ORS 131.525 was enacted, "they demonstrate that this court previously had established a guideline for trial courts to follow when faced with the possibility that a jury is unable to agree upon a verdict." 322 Or at 372. The court then concluded:

> "A finding by defendant judge that the jury *did not* agree upon a verdict as to counts one and three is not the equivalent of a finding that the jury was *unable* to agree upon a verdict as to those counts. Because it simply is not clear from the record whether defendant judge made such a finding in this case, the statutory exception to former jeopardy contained in ORS 131.525(1)(b)(D) does not apply, and the prosecution is barred from retrying Relator on counts one and three."

*Id.* at 373 (emphasis in original).

*Turner* did not, however, end with that conclusion. Instead, the court proceeded to explain why ORCP 59 F(1)(a), which describes the procedure for discharging a deadlocked jury,[11] corroborated the conclusion that ORS 131.525(1)(b)(D) did not apply in *Turner*. 322 Or at 376. ORCP 59 F(1)(a) provides:

"The jury shall not be discharged after the cause is submitted to them until they have agreed upon a verdict and given it in open court unless:

"* * * At the expiration of such period as the court deems proper, it satisfactorily appears that there is no probability of an agreement[.]"

In *Turner*, the Supreme Court first noted that the record there failed to satisfy the requisites of ORCP 59 F(1)(a)—that is, "nothing in the record indicates that, at the time [the trial court] dismissed the jury, it 'satisfactorily appear[ed] that there [was] *no probability* of an agreement'" on the disputed counts. 322 Or at 373 (quoting ORCP 59 F(1)(a); emphasis and brackets in *Turner*). The court then explored the proper interplay between ORCP 59 F(1)(a) and ORS 131.525(1)(b)(D) and, particularly, whether failure to satisfy the former precluded invocation of the latter:

"The central question is whether compliance with ORCP 59 F(1)(a) is a *prerequisite* to the applicability of the statutory exception to former jeopardy contained in ORS 131.525(1)(b)(D). * * * That is, we must determine whether, in enacting ORS 131.525(1)(b)(D), the legislature intended that the requirements of ORCP 59 F(1)(a) be met in order for a trial judge to find that a jury is 'unable to agree upon a verdict' for the purposes of ORS 131.525(1)(b)(D)."

*Turner*, 322 Or at 373-74 (emphasis added).

The court then engaged in an extended *PGE* exegesis, beginning with parallels in the language of the two provisions:

"The first clause of ORCP 59 F states the general rule of that provision: a jury shall not be discharged until the jurors have 'agreed upon a verdict.' Here, ORCP 59 F uses essentially the same language, 'agree upon a verdict,' as

---

[11] ORCP 59 F applies in criminal cases. ORS 136.330(1).

does the exception to former jeopardy contained in ORS
131.525(1)(b)(D). Paragraph (1)(a) of ORCP 59 F permits
discharge of the jury if there is *no probability* of an agree-
ment, not merely if the jury fails to agree. Similarly, ORS
131.525(1)(b)(D) provides that termination of a proceeding
will nullify the attached jeopardy if the jury members are
*unable* to agree upon a verdict, not merely if they fail to
agree. Clearly, the text of both provisions focuses on a jury's
*ability* to come to an agreement, as opposed to whether or
not the jury members *in fact* agree upon a verdict."

*Turner*, 322 Or at 374 (emphasis in original). The court later
noted that the legislative history of the enactment of ORS
131.525(1)(b)(D) explicitly referred to the statutory antece-
dent of ORCP 59 F(1)(a), *former* ORS 17.330, which included
virtually identical language.[12] Given that history, the court
observed that "it appears that the drafters intended that the
two provisions should be read together." *Id.* at 375.

The court concluded by summarizing the relation-
ship between ORS 135.525(1)(b)(D) and ORCP 59 F(1)(a):

"[C]ompliance with the procedural rule set forth in ORCP
59 F(1)(a) is a *prerequisite* to the triggering of the exception
to former jeopardy contained in ORS 131.525(1)(b)(D). In
other words, only when it satisfactorily appears that there
is no probability of an agreement, under ORCP 59 F(1)(a),
does a trial judge have a basis to find that the jury is unable
to agree upon a verdict for the purposes of ORS
131.525(1)(b)(D)."

*Turner*, 322 Or at 375-76 (emphasis added). In a footnote
accompanying that text, the court explained:

---

[12] ORS 17.330 was repealed when the Oregon Rules of Civil Procedure were
enacted in 1979. Or Laws 1979, ch 284, § 199. That statute read, in part, as follows:

"Except as provided in * * * the jury shall not be discharged after the cause
is submitted to them until they have agreed upon a verdict and given it in open
court, unless by the consent of both parties entered in the journal, or unless at
the expiration of such period as the court deems proper, it satisfactorily
appears that there is no probability of an agreement."

The original and substantially identical antecedent of that statute was section
204 of the Deady Code of 1862. General Laws of Oregon, Civ Code, ch II, title III, §
204, p 190 (Deady 1845-1864). In *State v. Shaffer*, 23 Or 555, 32 P 545 (1893), which
antedated *Reinhart* by two years and which was cited with approval in *Reinhart*, 26
Or at 474, the court held that the application of that statute did not violate Article
I, section 12, of the Oregon Constitution.

"This reading of ORCP 59 F(1)(a) and ORS 131.525(1)(b)(D) makes sense from a procedural standpoint. When a jury cannot agree upon a verdict, the inquiry is whether it satisfactorily appears that there is no probability of an agreement. If that is the case, the trial judge then can dismiss the jury under ORCP 59 F(1)(a). That act of discharging the jury constitutes termination of the proceeding based upon the trial judge's finding that the jury was unable to agree upon a verdict, for the purposes of ORS 131.525(1)(b)(D)."

*Id.* at n 18.

Respectfully, but candidly, *Turner*, as deconstructed, raises many unanswered questions: What is the proper relationship between the procedure described in such prestatutory decisions as *Reinhart* and *Chandler* and the requirements of ORS 131.525(1)(b)(D)? Are those procedures mandatory and exclusive, or merely preferable? That is, does the "if the court finds" language require an explicit on-the-record determination of inability to agree *à la Reinhart*? And, if so, shouldn't the analysis in *Turner*—where the trial court obviously did not make such an explicit finding—have been much easier? For that matter, what is the significance of the Supreme Court's observations that "the record contains no *indication* of an affirmative finding" and that it "is not *clear from the record* whether [the trial judge] made such a finding"? *Turner*, 322 Or at 372, 373 (emphasis added). Again, if *Turner* required an explicit on-the-record "finding" of inability to agree, those statements would seem to be gratuitous. Either the trial court made an explicit finding, or it did not.

Conversely, if the requirements of ORS 131.525(1)(b)(D) are satisfied any time the trial court discharges the jury after the jury has informed the court that it is unable to reach a verdict, then what is the distinction between ORS 131.525(1)(b)(D) and ORCP 59 F(1)? That is, any time the court discharges the jury in such circumstances, it would seem that the requisite, albeit implicit, "finding" could be logically inferred. And yet, *Turner* indicates that ORCP 59 F(1)(a) and ORS 131.525(1)(b)(D) are *not* coextensive; rather, satisfaction of the former is merely a "prerequisite" for the court to make the requisite finding triggering the latter. *Turner*, 322 Or at 373, 375. Still, in its penultimate

footnote, 322 Or at 376 n 18, the court also seemed to imply that, in appropriate circumstances, the act of discharging the jury in accordance with ORCP 59 F(1)(a) might itself represent a "finding" for purposes of ORS 131.525(1)(b)(D).

We imply no criticism. Rather, the point is that, because of the questions *Turner* raises or leaves unanswered, *Turner* does not pronounce a binding rule of prior construction by which "finds" in ORS 131.525(1)(b)(D) connotes or requires an explicit on-the-record declaration by the trial judge that the jury must be discharged because of its inability to agree.

Two salient aspects of *Turner* support that conclusion. First, while *Turner*'s reiteration of such prestatutory decisions as *Reinhart* and *Chandler* indicates that an explicit finding is preferable, nothing in *Turner* necessarily precludes reliance on a sufficient implicit determination. *See Turner*, 322 Or at 372 (describing explicit on-the-record finding as "*most appropriate* means" and describing *Reinhart* and *Chandler* as establishing a "*guideline* for trial courts to follow" (emphasis added)).

Second, the discussion in *Turner* cannot be divorced from its circumstantial underpinnings. In *Turner*, the circumstances surrounding the jury's verdict and the trial court's discharge of the jury were so ambiguous and confusing that the reviewing court could not discern why the trial judge dismissed the jury, much less that that dismissal was based on the jury's inability (as opposed to mere failure) to agree. Thus, the court in *Turner* was not presented with the question of whether the requisite "finding" can be circumstantially inferred when, as here, the jury's inability to agree was manifest and there could be no other plausible reason for the court to have discharged the jury.

We thus conclude that *Turner* is not conclusive under the rule of prior construction. *Turner* does not mandate "formality"; it requires only that the court find that the jury was unable to reach a verdict, without prescribing the form or content of that determination. Thus, the ambiguity in the term "finds" remains, and nothing in the statutory context affords guidance in resolving that ambiguity. Nor, proceeding to *PGE*'s "second level," does the legislative history of

ORS 131.525(1)(b)(D), as comprehensively recounted in *Turner*, resolve the ambiguity. Indeed, as indicated in *Turner*, the pertinent commentary referred both to such prestatutory decisions as *Reinhart* and *Chandler*, which prescribed an on-the-record finding of inability to agree, and to *former* ORS 17.330, which did not. Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Procedure Code, Final Draft and Report § 28, 22 (Nov 1972).

■ We proceed, finally, to *PGE*'s "third level," "general maxims of statutory construction." 317 Or at 612. Among those maxims is the principle that ambiguities in statutory language should be construed in such a way as to avoid "an absurd result that is inconsistent with the apparent policy of the legislation as a whole." *State v. Vasquez-Rubio*, 323 Or 275, 283, 917 P2d 494 (1996).

In applying that maxim, we briefly reiterate the uncontradicted facts here: (1) The jury foreperson informed the trial judge in writing that all jurors had stated that they were at an "impasse," that they were "unable to reach a decision," and "unwilling to change their minds," and that, in the foreperson's estimation, "more time [would not] help." (2) The trial judge confirmed that information by inquiring of the jurors in open court. (3) The trial judge stated that the juror's note had "suppl[ied] us with the information that I was about to ask for." (4) Immediately after reading the verdicts aloud, the court discharged the jurors and declared a mistrial on the unresolved counts. There was no plausible reason evinced on the record, other than the jurors' express inability to reach a verdict even with further deliberation, for the court to have discharged the jury. In sum, unless we are to assume that the trial judge acted irrationally and capriciously, the only plausible reading of this record is that the trial judge did, in fact, discharge the jury because it was unable to reach a verdict.

Adopting defendant's proposed construction of "finds"—as requiring a "formal" on-the-record finding— would preclude retrial of defendant on serious criminal charges in these circumstances. That is, statutory double jeopardy would apply notwithstanding that the jury was, in fact, unable to agree and that the trial court necessarily discharged the jury based on that inability. Such a result would,

indeed, absurdly and unconscionably elevate ambiguous form over incontrovertible substance.

We thus conclude that ORS 131.525(1)(b)(D) is satisfied, even in the absence of an explicit finding, where, as here, (1) the record demonstrates that the jury was unable to reach a verdict and further deliberations would have been unavailing; (2) the trial court discharged the jury after confirming that inability to reach a verdict; and (3) the record does not disclose any other plausible reason for the court to have discharged the jury at that time. Consistently with that construction, we further conclude that the trial judge erred when he found that he had failed to make the requisite finding for purposes of ORS 131.525(1)(b)(D). We fully appreciate the apparent incongruity of reversing the trial judge's own determination as to what he had found at the time that he received the verdict. Nevertheless, the trial judge's determination in that regard rested on the erroneous assumption that *Turner* requires a "formal" finding.

In sum, the trial court's dismissal of the jury comported with ORS 131.525(1)(b)(D). That, in turn, yields two consequences, one jurisdictional and the other substantive. Jurisdictionally, the application of ORS 131.525(1)(b)(D) operated to "annul" jeopardy. *See Bannister*, 118 Or App at 258. That "annulment" renders the trial court's order dismissing the indictment "an order made prior to trial" for purposes of ORS 138.060(1)(a). *See Summers*, 151 Or App at 305. Accordingly, we determine that we have jurisdiction over this appeal. Concomitantly, and substantively, we conclude that the trial court erred in determining that ORS 131.515 barred retrial of the three unresolved counts.

Defendant next asserts that, regardless of the operation of ORS 131.515, a variety of constitutional double jeopardy impediments precludes retrial of any of the unresolved counts. We first address defendant's arguments pertaining to the felony murder count only.

Defendant first invokes, as an alternative basis for affirmance, the trial court's "implied acquittal" rationale for precluding retrial of the felony murder count. As we understand the trial court's logic, it proceeded as follows: (1) Commission of the predicate felony (first-degree robbery) was an

element of felony murder, ORS 163.115(1)(b); (2) the jury must unanimously agree as to all elements of felony murder; (3) although the jury convicted defendant of first-degree robbery by a 10-2 vote, that vote showed that the jury, necessarily, could not unanimously agree as to the "commission of the underlying felony" element of felony murder; (4) because defendant had been convicted of first-degree robbery, the state could not "retry" him on that charge without violating double jeopardy protections; (5) permitting the state, in a retrial of the felony murder charge, to present evidence that defendant had, in fact, committed first-degree robbery would constitute a "retrial" of the first-degree robbery charge; and (6) consequently, the state is constitutionally precluded from retrying the felony murder charge notwithstanding that the jury was unable to reach a verdict on that charge in the first trial.

That reasoning fails in several respects. As a matter of law, retrial of the felony murder charge will not result in either unconstitutionally impermissible multiple prosecutions or multiple punishments. Defendant would not be retried on the first-degree robbery charge on which he was previously convicted; rather, he would merely be retried on the felony murder charge on which the jury was unable to reach a verdict. Nor would defendant be subject to multiple punishments for the first-degree robbery; rather, he would be subject to punishment for felony murder—a crime for which commission of the predicate felony is an element. ORS 163.115(1)(b).

Implicit in the trial court's reasoning is the assumption that, because the state failed to muster unanimity on the "commission of the underlying felony" element in the first trial, the state is somehow constitutionally precluded from achieving a better result in a second trial. As a practical matter, that premise is curious: If the jury had *hung* on the first-degree robbery charge in the first trial, the state would obviously be entitled to retry both that charge and the felony murder charge; however, under the trial court's reasoning, because the jury *convicted* on the first-degree robbery charge, but by less than a unanimous vote, the state is somehow precluded from retrying the felony murder charge. That is, the

state is placed in a *worse* position because the jury convicted, rather than hung, on the robbery count.

That incongruity is the product of the trial court's erroneous equation of (1) first-degree robbery as a distinct *crime* and (2) the commission of a felony as an *element* of felony murder. Determination of the former is not constitutionally conclusive of the latter. *See State v. Watkins*, 67 Or App 657, 660-61, 679 P2d 882, *rev den*, 297 Or 272 (1984). In *Watkins*, the jury voted 12-0 to convict the defendant of aggravated murder committed in the course of a first-degree burglary, while voting 11-1 to convict on the predicate burglary. We did "not view the verdicts as legally inconsistent." *Id.* at 661. Rather:

> "[O]nce the jury had determined that defendant was guilty of burglary, that matter was final. The subsequent deliberations on the aggravated murder charge involved a separate and independent question, on which the jurors were not bound by their previous votes on the burglary count."

*Id.* at 660-61. The same reasoning applies here. The jury's 10-2 verdict for conviction on the first-degree robbery charge pertaining to Herminio-Guadarrama does not preclude retrial of the felony murder count on which the jury was unable to reach a verdict.

■ Defendant next advances another, and related, "implied acquittal" argument, which the trial court also endorsed: Because first-degree robbery was a lesser-included offense of felony murder, the jury's conviction on the former effectuated an implied acquittal as to the latter. We disagree. Even if we were to accept the problematic premise that first-degree robbery is a lesser-included offense of felony murder,[13]

---

[13] In *State v. Burnell*, 129 Or App 105, 109, 877 P2d 1228 (1994), we held that, "[b]ecause burglary in the first degree contains no elements that differ from the felony murder statute, it is a true lesser included offense of the burglary felony murder count." As support for that proposition, we relied on *Tucker*, 315 Or at 331, and *State v. Fish*, 282 Or 53, 56, 577 P2d 500 (1978). In *State v. Walton*, 134 Or App 66, 74-75, 894 P2d 1212, *rev den*, 321 Or 429 (1995), we reiterated that holding, again invoking *Tucker*.

*Tucker*'s continuing authority in that regard is, at least, questionable following *State v. Barrett*, 331 Or 27, 36, 10 P3d 901 (2000), where the court observed, in part, that "[w]e agree that the legislature undoubtedly intended that each of the *felonies* underlying a felony murder be separately punishable." (Emphasis in original.) As we explained in *State v. Ramsey*, 184 Or App 468, 477 n 5, 56 P3d 484 (2002), *rev den*, 335 Or 479 (2003):

there is no basis in this record to posit an implied acquittal as to felony murder.

In appropriate cases, where the jury has been given an "acquittal-first" instruction, ORS 136.460(2), conviction on a lesser-included offense evinces acquittal on the greater. *See generally State v. Horsley*, 169 Or App 438, 8 P3d 1021 (2000), *rev den*, 331 Or 692 (2001). Here, however, first-degree robbery was not before the jury as a lesser-included offense; instead, that crime was separately charged. Nor is there any indication on the record before us that the jury here was given any "acquittal-first" instruction, much less one pertaining to felony murder and first-degree robbery. Finally, and most starkly, the jury here obviously did *not* acquit as to felony murder—instead, the jurors hung by a 7-5 vote. There was no "implied acquittal" that bars retrial of the felony murder count.

■ We proceed to defendant's final alternative argument for affirmance, which is based on Fifth Amendment jurisprudence that posits a principle of "continuing jeopardy." Defendant's argument, as we understand it, is that, although the double jeopardy protections of Article I, section 12, of the Oregon Constitution and the Fifth Amendment are substantially "the same," *State v. Kimsey*, 182 Or App 193, 202, 47 P3d 916 (2002), the concept of "annulment" of jeopardy under Article I, section 12, *see Bannister*, 118 Or App at 258, has not been endorsed in Fifth Amendment case law. Instead, under the Fifth Amendment, once jeopardy attaches, it continues until it is "terminated" by a verdict of conviction or acquittal or by certain court orders—and, once "terminated," cannot be revived. *See generally Price v. Georgia*, 398 US 323, 326, 90 S Ct 1757, 26 L Ed 2d 300 (1970). Defendant asserts that the court's order of dismissal

---

"The court's holding in *Barrett* is in apparent conflict with its reasoning in [*Tucker*]. In *Tucker*, the court reasoned that separate sentences may not be imposed on a conviction for robbery and on a conviction for aggravated murder committed during the course of that robbery. *Tucker*, 315 Or at 331. *Barrett* appears to have overruled *Tucker sub silentio*."

*Barrett* does not refer to either *Tucker* or *Fish*.

Given our disposition and analysis, we need not resolve the troublesome question of the continuing vitality of the "lesser-included" aspect of *Burnell* and *Walton*, much less of *Fish* and *Tucker*.

in this case, even if erroneous, "terminated" jeopardy for Fifth Amendment purposes with respect to all counts. Thus, defendant reasons, regardless of our reversal of the trial court's order of dismissal, and regardless of the application of ORS 131.525(1)(b)(D), which operates to "annul" jeopardy for purposes of Article I, section 12, *see Bannister*, 118 Or App at 258, the Fifth Amendment bars reprosecution of all counts because of the "termination" (albeit erroneous) of jeopardy.

■     We note, at the outset, that "continuing jeopardy" is, at best, an amorphous concept. The Supreme Court itself has characterized its double jeopardy jurisprudence as a "veritable Sargasso Sea which could not fail to challenge the most intrepid judicial navigator." *Albernaz v. United States*, 450 US 333, 343, 101 S Ct 1137, 67 L Ed 2d 275 (1981). Nautical metaphors aside, in its broadest outline, federal "continuing jeopardy" means that, once jeopardy attaches, generally when the jury is empaneled, it continues until terminated— and cannot thereafter be revived. *See Richardson v. United States*, 468 US 317, 325, 104 S Ct 3081, 82 L Ed 2d 242 (1984); *Price*, 398 US at 326.[14]

■ ■     The key to the "continuing jeopardy" principle is the identification of the circumstances that operate to terminate "continuing jeopardy," precluding further proceedings. For example, a verdict of acquittal, either explicit or implicit, terminates jeopardy. *Price*, 398 US at 328-29. The same is true of a trial court's allowance of a motion for judgment of acquittal based on the legal insufficiency of the government's evidence. *United States v. Scott*, 437 US 82, 91, 98 S Ct 2187, 57 L Ed 2d 65 (1978). Conversely, a judicial declaration of a mistrial based on the jury's inability to agree on a verdict is not an event that operates to terminate jeopardy. *Richardson*, 468 US at 323-25 ("failure of the jury to agree on a verdict [is] an instance of 'manifest necessity' "; consequently, trial judge's termination of the trial on that basis "is not an event which terminates jeopardy"). Similarly, and particularly pertinent to this case, a trial court's dismissal of an indictment

---

[14] Further, and exacerbating the confusion, in *United States v. Sanford*, 429 US 14, 97 S Ct 20, 50 L Ed 2d 17 (1976) (per curiam), the Court, without expressly so stating, applied what one commentator has termed "the concept of suspended continuing jeopardy." William S. McAninch, *Unfolding the Law of Double Jeopardy*, 44 SC L Rev 411 (1993).

based on an erroneous interpretation of controlling law—that is, on a basis that is unrelated to an assessment of factual guilt or innocence—does not terminate jeopardy. *Scott*, 437 US at 98-99; *United States v. Sanford*, 429 US 14, 15, 97 S Ct 20, 50 L Ed 2d 17 (1976) (per curiam).

The facts in *Sanford* are strikingly similar to those here. In *Sanford*, the defendants' first trial ended in a hung jury, and the court *sua sponte* declared a mistrial. 429 US at 14. Several months later, while the government was preparing for the second trial, the defendants moved to dismiss the indictment, and the trial court granted that motion. The United States Court of Appeals for the Ninth Circuit dismissed the government's appeal, holding that, even if the government prevailed, any retrial would violate the Double Jeopardy Clause:

> " 'Here appellees have undergone trial. There is no question but that jeopardy has attached. That being so, and since the proceedings in the district court have ended in appellees' favor and the consequences of a reversal in favor of the Government would be that appellees must be tried again, we conclude that they would, on retrial, be placed twice in jeopardy.' "

*Id.* at 15 (quoting *U.S. v. Sanford*, 536 F2d 871, 872 (9th Cir 1976)).

The Supreme Court reversed. The Court agreed with the Ninth Circuit that "jeopardy attached at the time of the empaneling of the jury" in the original trial. 429 US at 15. Nevertheless, the Court emphasized that the trial had not ended in the defendants' favor but, instead, had been terminated by the trial court's *sua sponte* declaration of a mistrial based on the jurors' inability to reach a verdict. Thus, the Court reasoned, the declaration of the mistrial did not bar retrial:

> " 'We are of opinion, that the facts constitute no legal bar to a future trial. The prisoner has not been convicted or acquitted, and may again be put upon his defence. We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest

necessity for the act, or the ends of public justice would otherwise be defeated.'"

*Sanford*, 429 US at 15-16 (quoting *United States v. Perez*, 22 US 579, 579, 6 L Ed 165, 9 Wheat 579 (1824)). The Court then considered the effect of the trial court's subsequent granting of the defendants' motion to dismiss the indictment:

"The District Court's dismissal of the indictment occurred several months after the first trial had ended in a mistrial, but before the retrial of respondents had begun. This case is, therefore, governed by [*Serfass v. United States*, 420 US 377, 95 S Ct 1055, 43 L Ed 2d 265 (1975)], in which we held that a pretrial order of the District Court dismissing an indictment charging refusal to submit to induction into the Armed Forces was appealable under 18 USC § 3731. The dismissal in this case, like that in *Serfass*, was prior to a trial that the Government had a right to prosecute and that the defendant was required to defend. Since in such cases a trial following the Government's successful appeal of a dismissal is not barred by double jeopardy, an appeal from the dismissal is authorized by 18 USC § 3731."

*Sanford*, 429 US at 16.

The parallels between the present case and *Sanford* are apparent. As in *Sanford*, the trial court's erroneous dismissal of the indictment in this case occurred after a termination of the original trial based on "manifest necessity" occasioned by the jury's inability to reach a verdict. Given that sequence—dismissal occurred after the properly terminated original trial and before the retrial—a successful appeal of the trial court's erroneous dismissal of the indictment, resulting in a remand for a second trial, does not offend Fifth Amendment double jeopardy protections.[15]

Defendant contends, nevertheless, that *Sanford* is distinguishable because the trial court's dismissal of the indictment there was at the defendants' instigation, while here, the trial court's order dismissing the three remaining counts as being barred under ORS 131.515 was *sua sponte*.

---

[15] The Supreme Court's determination that the order of dismissal in *Sanford* was an appealable "pretrial" order for purposes of federal appellate jurisdiction also parallels our holding that the trial court's order of dismissal here is appealable under ORS 138.060(1)(a). *See* 192 Or App at 252.

Even if we were to accept that characterization of the trial court's action,[16] that is a distinction without substantive significance. Nothing in the decisions that defendant cites, particularly *Scott* and *United States v. Jenkins*, 420 US 358, 95 S Ct 1006, 43 L Ed 2d 250 (1975), *overruled by Scott*, 437 US at 87, persuades us that the Fifth Amendment would have compelled a different result in *Sanford* if the trial court had erroneously dismissed the indictment *sua sponte*.[17] *See generally Sattazahn v. Pennsylvania*, 537 US 101, 114, 123 S Ct 732, 154 L Ed 2d 588 (2003) ("Surely double-jeopardy protections cannot hinge on whether a trial court characterizes its action as self-initiated or in response to [a] motion.").

---

[16] The procedural posture before the trial court was convoluted. About a week after the court discharged the jury, defendant filed a motion to bar retrial of all of the unresolved counts on statutory and constitutional grounds. The court initially denied that motion but, after expressing some doubts about its ruling, solicited additional input from the parties regarding the propriety of retrying the felony murder count. Ultimately, counsel for both parties submitted memoranda focusing on the constitutionality of retrying the felony murder count. Those memoranda did not address the question of whether the court's discharge of the jury satisfied the requirements of ORS 131.525(1)(b)(D).

The trial court treated defendant's memorandum of additional authorities as a "motion for reconsideration" of the "double jeopardy issues." The court then issued an opinion and order that not only addressed the double jeopardy issues pertaining to retrial of the felony murder count, but also dismissed all counts as being barred by ORS 131.515. The court styled that disposition as "Opinion and Order Allowing Defendant's Motion to Dismiss Count 2, 'Felony Murder with a Firearm,' and Dismissing Counts 4 and 5 *Sua Sponte*."

Given that sequence, it is at least questionable whether the trial court's dismissal of all three counts as being barred by ORS 131.515 because of the inapplicability of ORS 131.525(1)(b)(D) was truly "*sua sponte*" or was, albeit indirectly, instigated by defendant's motion to bar retrial.

[17] At the end of an overlong opinion, a dissertation on *Jenkins* and *Scott* is unwarranted. Two salient observations suffice.

First, neither *Jenkins* nor *Scott*, which substantially overruled *Jenkins*, 437 US at 101, involved *sua sponte* judicial orders. Rather, both addressed the double jeopardy implications of the government's appeals from orders granting defense motions to dismiss.

Second, neither *Jenkins* nor *Scott* involved the circumstances presented here (and in *Sanford*) in which the order of dismissal was made after the jury had been properly discharged. Rather, in *Jenkins*, the court dismissed the indictment in rendering findings of fact and conclusions of law following a bench trial, 420 US at 362, and in *Scott*, the court granted the motion to dismiss based on preindictment delay after the close of the evidence in a jury trial. 437 US at 84. Thus, the dismissal order here did not even arguably implicate a defendant's "valued right to have his trial completed by a particular tribunal." *Scott*, 437 US at 100 (quoting *United States v. Jorn*, 400 US 470, 484, 91 S Ct 547, 27 L Ed 2d 543 (1971) (internal quotation marks omitted)).

We thus conclude that here, as in *Sanford*, the trial court's erroneous dismissal of the indictment cannot operate to bar retrial where the prior trial was, in fact, properly terminated based on the jury's inability to reach a verdict. In that regard, we emphasize that defendant, functionally, is in precisely the same position as he would have been if the trial court had never erroneously dismissed the indictment under ORS 131.515: Defendant is subject to retrial because the jury was unable to reach a verdict. The Fifth Amendment demands nothing more. *See Richardson*, 468 US at 323-25.

We turn finally to defendant's cross-assignment of error. Defendant contends that the trial court erred in failing to enter a judgment of acquittal pursuant to ORS 136.130 after dismissing the unresolved charges with prejudice.[18] Because defendant did not move for a judgment of acquittal pursuant to ORS 136.130, the matter is not preserved for our review. Nor, contrary to defendant's suggestion, is this matter reviewable as "an error of law apparent on the face of the record." ORAP 5.45(1). The applicability of ORS 136.130 in these circumstances is, at least, "reasonably in dispute." *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). As the state notes in reply, we have consistently held that ORS 136.130 applies only if charges have been dismissed pursuant to ORS 136.120 based on the state's failure to be prepared for trial. *See, e.g.*, *State v. Waechter*, 163 Or App 282, 291, 986 P2d 1281 (1999).

Order of dismissal with prejudice reversed; remanded for new trial.

---

[18] ORS 136.130 provides, in part:

"If the court orders the accusatory instrument to be dismissed and the instrument charges a felony or Class A misdemeanor, the order is not a bar to another action for the same crime unless the court so directs. If the court does so direct, judgment of acquittal shall be entered."